NOT DESIGNATED FOR PUBLICATION

No. 118,825

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RYAN DULL,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DEBORAH HERNANDEZ MITCHELL, judge. Opinion filed February 1, 2019. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., POWELL, J., and STUTZMAN, S.J.

PER CURIAM:  Ryan Dull was convicted by a jury of his peers of rape, aggravated criminal sodomy, and aggravated indecent liberties. Dull filed a direct appeal, and the Kansas Supreme Court affirmed. Dull then subsequently filed his present K.S.A. 60-1507 motion, alleging that his trial counsel was ineffective for failing to utilize an expert witness regarding child forensic interview techniques. After an evidentiary hearing, the district court concluded Dull's trial counsel had not been ineffective and denied his motion. On appeal, Dull now reprises the arguments he made to the district court. Finding no error, we affirm.

1

On April 29, 2010, a jury convicted Dull of rape, aggravated criminal sodomy, and aggravated indecent liberties. The district court sentenced Dull to concurrent hard 25 life sentences for the convictions. Dull directly appealed his convictions, and the Kansas Supreme Court summarized the facts of Dull's case as follows:

"The events that led to Dull's prosecution for aggravated criminal sodomy, rape, and aggravated indecent liberties began when he gave D.P.A. and her girlfriend, K.E.B., a ride to his home one July evening in 2009. The victim, D.P.A., whom Dull knew to be 13, had romantic feelings toward Dull, age 20. K.E.B. had similar feelings toward Dull's younger brother, Bryce, one of 17-year-old twins who lived with Dull. On the night of the crimes, the two girls had told their parents they would be spending the night elsewhere.

"According to the girls, they socialized awhile with Dull and the twins and another friend in the living room. Then D.P.A. went with Dull into his bedroom while K.E.B. went with Bryce into his bedroom. Once in Dull's bedroom, Dull touched and kissed D.P.A.; took her clothes off; performed oral sex on her; penetrated her vagina with his finger; and then, after donning a condom, had sexual intercourse with her. D.P.A. emerged from the bedroom wrapped in a sheet, and, when the others asked if she was wearing any clothes, she lifted the sheet to show them that she was not. D.P.A. told K.E.B. and another friend that she and Dull were going to have sex again, but they did not. D.P.A. spent the night with Dull in his bed. The next morning, Dull drove the girls home. He 'broke up' with D.P.A. by text about a week later.

"When D.P.A.'s mother learned of these events, law enforcement became involved. When interviewed by the police, Dull initially denied knowing D.P.A. and denied being anywhere near his home on the night of the crimes. He later admitted giving D.P.A. a ride to his home but said that he had slept alone on the night in question.

"Ultimately Dull was charged with aggravated criminal sodomy, rape, and aggravated indecent liberties in Case No. 09CR3875. In another complaint filed the same

day in Case No. 09CR3876, Dull was charged with burglary and misdemeanor theft arising from a wholly unrelated incident.

"At his jury trial in the sex crimes case, Dull testified that he had a girlfriend at the time of the crimes and never dated D.P.A. He admitted that, because Bryce wanted him to, he had driven K.E.B. and D.P.A. to his home. He also testified that D.P.A. asked him if he 'would ever go out with her' and 'if [he] liked her.' He testified that he said no, that he wasn't interested, and that he had a girlfriend. He also testified that he did not have sex with D.P.A. and did not kiss her. He said that there was no sexual contact between them, and he went to bed alone on the night he had driven her and K.E.B. to his home. He said that, when he woke up, D.P.A. was in his bed and was clothed. He admitted that he had not been truthful with police during their initial interviews with him.

"K.E.B.'s trial testimony and the testimony of the other friend who was present at the home largely corroborated D.P.A.'s version of events. D.P.A.'s mother also testified, as did Officer Grover 'Jeff' Piper, who conducted investigative interviews. Piper's testimony about the results of his interviews of the girls and the friend was consistent with their trial testimony. He also testified about Dull's changing versions of the evening's events, including the fact that he originally claimed he was not present at the home but was at work.

"The only person who continued to deny that Dull was at the home was the other twin, Brett. Brett testified that Dull was in the home only for about 15 minutes; that D.P.A. never went into Dull's bedroom; that both girls slept in the living room; that Brett slept in the room he shared with Bryce; and that Dull slept alone in his own room. Brett also accused the friend who testified consistently with K.E.B. of having 'a habit of lying a lot.'" *State v. Dull*, 298 Kan. 832, 833-35, 317 P.3d 104 (2014).

In his direct appeal, Dull argued that prosecutorial error denied him a fair trial, that the district court erred by admitting evidence about his brother having sex with the victim's friend in the next room, that his trial counsel was ineffective, that insufficient evidence supported his convictions, and that the district court erred by failing to make specific findings on the record before denying his departure motion at sentencing. Our

3

Supreme Court rejected all of these arguments and affirmed Dull's convictions and sentences on January 31, 2014. 298 Kan. at 842.

On January 30, 2015, Dull filed a timely K.S.A. 60-1507 motion through counsel. Dull raised the following arguments: (1) His life sentence constituted cruel and unusual punishment under the Eighth Amendment to the United States Constitution; (2) his trial attorney, Quentin Pittman, was ineffective for failing to investigate a potential alibi defense, specifically by failing to subpoena cell-phone call logs and location records; (3) Pittman was ineffective for failing to consult with an expert concerning the quality of the forensic interviews conducted by police so he could prepare for cross-examination of the main investigating police officer and make an attack on the techniques that officer used to conduct a child-sex-victim interview; and (4) Pittman was ineffective for failing to pursue a sex offender evaluation before sentencing which negatively impacted Dull's ability to get a downward durational departure.

By the time the district court held the evidentiary hearing on March 16, 2017, the only remaining issue was whether Dull's trial counsel was ineffective for failing to utilize an expert witness regarding child forensic interview techniques. At this hearing, the district court heard testimony from Robert Barnett, Ph.D.—a licensed psychologist—and Pittman.

Dr. Barnett testified regarding proper interview techniques for child victims of sex crimes. He testified he believed that anyone doing an interview of a child victim should have a clinical degree. He opined that the detective went into the interview believing that D.P.A. had been molested and questioned her in a direct and suggestive manner. In his opinion, the interview had not been conducted properly. He stated that it was his opinion a defense attorney should consult with an expert when handling a case that involves a statement from a child victim of sexual abuse.

4

However, on cross-examination, Dr. Barnett admitted that he had only read the transcript of D.P.A.'s interview and agreed that was less than ideal because he liked to see the body language and nonverbal responses that are generated in an interview. Dr. Barnett testified that if he had been hired by the defense attorney it was "possible" he could have offered information that would have changed the outcome of the trial; yet, he also testified that he did not review the trial transcript, did not read anything about the statements that movant made, did not read the closing argument, and did not review the probable cause affidavit. Dr. Barnett also admitted that he had never found an interview that he could not find fault with.

Pittman testified he had tried over 10 Jessica's Law cases in the 6 to 7 years he had been employed with the Public Defender's Office at the time of trial. He said he was familiar with the "Finding Words" interview protocol and had taught two continuing legal education courses on Jessica's Law cases. Pittman testified that the defense at trial was that Dull did not commit the crimes. Dull testified as did others who were present the night of the crimes.

Pittman stated that he determined an expert would not have been beneficial to Dull's case because D.P.A.'s testimony at trial was understandable and unambiguous, as were her answers during the interview conducted by the police. Pittman did not see where an expert would solve "the problem" of D.P.A. stating during her interview that she went to Dull's residence and sexual activities occurred between the two, especially when she testified similarly at trial. Pittman testified that he chose to raise issues regarding the interview through cross-examination and closing argument and he felt that the issues with D.P.A.'s testimony were adequately raised throughout the trial. Importantly, Pittman testified he did not believe that an expert in child interview techniques was necessary in this case and he made a strategic decision not to use one.

5

The district court denied Dull's 60-1507 motion finding that, based on his training and experience in trying child sex crimes cases, Pittman's conduct fell within the wide range of reasonable professional conduct. The district court also found that Dull had failed to carry his burden in showing that the result of the trial would have been different if an expert had been used.

Dull now timely appeals.

On appeal, Dull argues that the district court erred in dismissing his 60-1507 motion because his trial counsel was ineffective for failing to consult an expert witness on child interview techniques in child sex cases and that this ineffectiveness altered the outcome of the trial. The State argues in response that the district court did not err for two reasons: First, trial counsel's performance was not deficient; second, Dull failed to demonstrate prejudice because of trial counsel's performance.

A district court has three options when reviewing a K.S.A. 2017 Supp. 60-1507 motion:

> "'(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing.' [Citation omitted.]" *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014).

The applicable standard of review depends upon which of these options a district court utilizes. As is the case here, after a full evidentiary hearing on a K.S.A. 60-1507 motion, the district court must issue findings of fact and conclusions of law concerning

all issues presented. Supreme Court Rule 183(j) (2019 Kan. S. Ct. R. 228). An appellate court reviews the district court's findings of fact to determine whether they are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. *State v. Adams*, 297 Kan. 665, 669, 304 P.3d 311 (2013). "Substantial competent evidence is such legal and relevant evidence as a reasonable person might regard as sufficient to support a conclusion." *Hodges v. Johnson*, 288 Kan. 56, 65, 199 P.3d 1251 (2009). Appellate review of the district court's ultimate conclusions of law is de novo. *Adams*, 297 Kan. at 669.

"A claim alleging ineffective assistance of trial counsel presents mixed questions of fact and law requiring de novo review." *Thompson v. State*, 293 Kan. 704, 715, 270 P.3d 1089 (2011). An appellate court "reviews the underlying factual findings for substantial competent evidence and the legal conclusions based on those facts de novo." *Boldridge v. State*, 289 Kan. 618, 622, 215 P.3d 585 (2009).

To prevail on a claim of ineffective assistance of counsel, a movant must establish "(1) the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, *i.e.*, that there is a reasonable probability the jury would have reached a different result absent the deficient performance." *Sola-Morales*, 300 Kan. at 882; see *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 674 (1984).

Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. *Bledsoe v. State*, 283 Kan. 81, 90, 150 P.3d 868 (2007). The reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). "[T]he [movant] bears the burden of demonstrating that trial counsel's alleged deficiencies were not the result of strategy." *Sola-Morales*, 300 Kan. at 888. To establish

prejudice, the movant must show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different, with a reasonable probability meaning a probability sufficient to undermine confidence in the outcome. See *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015).

Dull principally relies on *Mullins v. State*, 30 Kan. App. 2d 711, 46 P.3d 1222, *rev. denied* 274 Kan. 1113 (2002) to support his ineffectiveness claim. *Mullins* involved allegations that Mullins sexually abused his son when his son was between the ages of seven and nine years old. The *Mullins* panel held: "*Under the facts of this case . . .* (1) Defense counsel was ineffective in failing to ever consider hiring an expert, either for use at trial or for use in preparation of cross-examination of the State's witnesses." (Emphasis added.) 30 Kan. App. 2d 711, Syl. ¶ 3. In limiting its holding, the *Mullins* panel highlighted three important sets of facts: (1) There were no visual signs of sexual abuse and no witnesses to the alleged offenses, and, consequently, Mullins was convicted primarily on the testimony of the child-victim; (2) the victim's physical exam was normal; and (3) no expert was called to rebut the victim's or nurse's testimony. 30 Kan. App. 2d at 712. Further, the *Mullins* panel found that trial counsel's failure to utilize an expert was not a reasonable strategic decision because counsel was not experienced in trying sexual abuse cases, he did not look at the issue of child-interview techniques in any depth, he did not look into the possibility of hiring an expert even though he had concerns about the interview techniques used, and he testified he should have hired such an expert. 30 Kan. App. 2d at 714-15, 717.

Although other cases since *Mullins* have remanded similar K.S.A. 60-1507 motions for evidentiary hearings, *Mullins* does not establish a bright line rule that *all* instances of a counsel's failure to secure and utilize an expert on child witness interview techniques equates to deficient representation. See, e.g., *Hall v. State*, No. 109,168, 2014 WL 1096748, at *7-9 (Kan. App. 2014) (unpublished opinion) (declining to extend *Mullins* under facts presented in case); *Westerman v. State*, No. 94,627, 2006 WL

8

2440003, at *3 (Kan. App. 2006) (unpublished opinion) (same); *Snavely v. State*, No. 89,156, 2003 WL 22430275, at *2 (Kan. App. 2003) (unpublished opinion) (same). But see *Chubb v. State*, No. 99,912, 2009 WL 929136, at *3 (Kan. App. 2009) (unpublished opinion) (holding given potential for prejudice when case "depends on the children's testimony without any physical evidence," movant should be allowed opportunity to develop and support argument with evidence at evidentiary hearing on 60-1507 motion). Significantly, the panel in *Mullins* specifically limited its holding to the facts of that case. 30 Kan. App. 2d 711, Syl. ¶ 3; see also *State v. Urban*, 291 Kan. 214, 223, 239 P.3d 837 (2010) (holding Court of Appeals panel not bound by decision of previous panel).

Here, it is important to look closely at the holding in *Mullins* on which Dull relies. That panel faulted trial counsel for failing to *ever consider* hiring an expert. Here, Dull's trial counsel did consider hiring an expert, but based on his experience with Jessica's Law cases, he just did not think that an expert would be useful. Pittman testified that (1) he had experience in handling child sex cases; (2) he had consulted with child-victim interview experts in the past; (3) he had training on interview techniques; (4) he had reviewed a tape of the victim's interview in this case; (5) other witnesses verified key components of the victim's story; (6) the interview technique was not responsible for the victim's inculpatory statements, in his opinion; (7) the victim was 13 years old and had no problems expressing her thoughts; and (8) he would have more strongly considered calling an expert at trial if the victim was younger and gave ambiguous answers or was subjected to interview techniques involving dolls.

A review of the record on appeal indicates that, rather than focusing on interview techniques, Pittman relied on attacking the victim's credibility though inconsistencies in the evidence and addressing the alleged inadequate police investigation during cross-examinations and closing arguments. Additionally, Pittman attempted to rebut the State's evidence at trial by calling Dull, his girlfriend, and his grandmother. As stated by the Kansas Supreme Court: "This case, unlike many sex crime prosecutions, was not a mere

9

credibility contest between victim and alleged perpetrator." *Dull*, 298 Kan. at 838. Unlike in *Mullins*, Pittman's decision not to consult with an expert was a reasonable and informed decision based on counsel's practical and educational experience with these types of cases and the evidence in the case.

Dr. Barnett's testimony was limited to proper interview techniques and did not bear on the particular attributes of the victim in this case. Of note, Dr. Barnett acknowledged that this interview technique would have less importance with more mature individuals or when there was corroborating evidence, as was the case here. Further, Dr. Barnett admitted that he had not reviewed the victim's taped interview and had not evaluated her emotional maturity. The district court did not find this testimony persuasive enough to undermine the reasonableness of Pittman's decision to proceed in the case without consulting an expert. Dull has failed to meet his burden in showing Pittman's conduct was not the result of trial strategy. See *Sola-Morales*, 300 Kan. at 888.

Further, even if we were to assume that Pittman's conduct was deficient, Dull has failed to show prejudice. He makes no showing of a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. See *Sprague*, 303 Kan. at 426. There was no error in the district court's dismissal of Dull's K.S.A. 60-1507 motion.

Affirmed.