No. 77,694

IN THE MATTER OF THE ADOPTION OF W.J., A MINOR.

(942 P.2d 37)

Opinion filed July 11, 1997.

*Daniel J. Markowitz*, of Law Offices of Daniel J. Markowitz, P.A., of Overland Park, argued the cause and was on the brief for petitioners/appellants.

The opinion of the court was delivered by

MCFARLAND, C.J.: This is an appeal from the denial of the adoption of a Chinese national being sought by a Kansas couple.

The facts may be summarized as follows: Mr. and Mrs. C. sought to adopt a Chinese infant. Due to Chinese governmental restrictions on family size and the Chinese people's preference for male children, large numbers of female infants are abandoned to orphanages each year. Various organizations have sprung up to assist Americans seeking adoption of such children. Working with one of these organizations, Mr. and Mrs. C. made arrangements to adopt W.J., who was born in Jiangxi Province, The People's Republic of China, on August 11, 1995, and abandoned by her parents at an orphanage in Wanzai.

Mr. and Mrs. C. had three other children, and it was decided that Mrs. C. would remain at home with the children and only Mr.

C. would go to China to complete the Chinese adoption process and bring the child home. This was accomplished in January 1996. Mr. C. returned to Kansas with:

1. The little girl, W.J.;
2. W.J.'s Chinese birth certificate;
3. a Chinese certificate of abandonment;
4. an official Chinese adoption certificate showing W.J.'s adoption by both Mr. and Mrs. C.;
5. W.J.'s Chinese passport;
6. W.J.'s United States visa authorizing her admission under "IR4" status;
7. English translations of the various Chinese documents.

Although not directly involved in the case herein, W.J.'s IR4 status is important as it plays a significant role in what Mr. and Mrs. C. were attempting to accomplish by instituting this adoption proceeding. This aspect will be set forth in the discussion later in this opinion.

On July 31, 1996, Mr. and Mrs. C. filed a petition in Johnson County District Court seeking a Kansas decree of adoption for W.J., which was accompanied by the above-referenced documents and a glowing home study prepared by a licensed social worker. Notice of the upcoming September 9, 1996, hearing was sent to the social worker (who appeared) and the representative of China's Children, the United States organization that had arranged the Chinese adoption. Mr. and Mrs. C. testified. There was no one present in opposition to the adoption.

At the conclusion of the hearing the court stated:

"The Court is going to deny the adoption without consent. In addition, no action to terminate parental rights has been made. The Court notes that the child was returned [sic] to the United States under the IR4 designation of Immigration and Naturalization. The parties should note that consent to the adoption has to be given by a proper party vested under Kansas statute, and no such consent has been received. Therefore, the matter will be denied and dismissed with prejudice.

. . . .

"I would urge you to look at the statute. There's several different ways of doing it correctly. We will stand in recess."

These statements from the bench were journalized as follows:

"Thereupon, the Court, having reviewed the file, heard and considered the evidence and statements of counsel, and being fully advised in the premises, finds that:

"1. Proper consents to the adoption of the child have not been filed in this action.

"2. No action to terminate parental rights has been made.

"3. The child was returned [sic] to the United States under the IR4 designation of Immigration and Naturalization.

"4. Consent to the adoption has to [have] been given by a proper party under Kansas statute, and no such consent has been received.

"It Is Therefore By The Court Considered, Ordered And Decreed that the Petition for Adoption of W.J. should be denied and this cause should be dismissed, with prejudice."

Mr. and Mrs. C. appealed to the Court of Appeals. The case was transferred to this court on our own motion, pursuant to K.S.A. 20-3018(c).

The transnational adoption of children has become an increasingly popular option for Americans seeking the adoption of children but who are daunted by the shortage of adoptable infants born in the United States. See Carlson, *Transnational Adoption of Children*, 23 Tulsa L.J. 317 (1988).

The completion of such an adoption involves the execution of carefully orchestrated sequential official acts of various governments. As different countries have different requirements for freeing a child for adoption by foreign nationals, great care must be taken to comply with the requirements of the particular country involved. This may or may not involve actual adoption in the infant's country of birth. Such adoption is necessary under Chinese law. See 23 Tulsa L.J. at 318-20, 335-36.

The Chinese documents accompanying W.J. show the date of her birth, her parental abandonment less than a month later to an orphanage, the adoption of W.J. by the petitioners herein, and her passport allowing her to leave the country. There is no apparent defect in any of the Chinese documents or in the Chinese adoption proceeding.

The Chinese proceedings have been carefully scrutinized by the United States Immigration and Naturalization Service (INS) and found to be lawful. This is a requirement for the issuance by INS

of the visa which authorized W.J.'s entry into this country. Her visa grants her IR4 classification. Had both Mr. and Mrs. C. travelled to China and been physically present through the Chinese proceedings there, W.J. would have been granted IR3 classification. INS would then have considered W.J.'s Chinese adoption valid and complete, not requiring a subsequent state adoption. The failure of Mrs. C. to personally see the infant prior to or during the Chinese adoption resulted in the IR4 classification, which mandates a state adoption proceeding before United States citizenship will be granted. See 23 Tulsa L.J. at 342, 344; 8 U.S.C. § 1101(b)(1)(F) (1994); 8 U.S.C. § 1151 (b)(2)(A)(i) (1994); 8 C.F.R. § 204.3 (1996); 62 Fed. Reg. 614 (January 6, 1997).

By virtue of her IR4 classification, then, petitioner asserts that W.J. must have a Kansas adoption proceeding if she is to be ultimately granted United States citizenship by INS. This is why the petitioners elected to file this action seeking the adoption of W.J. So, in summary, it appears that four official governmental proceedings are required for W.J. to become the child of the petitioners and a citizen of the United States: (1) adoption in China; (2) issuance of a visa by the INS; (3) a Kansas decree of adoption; and (4) granting of United States citizenship by INS. Petitioners contend the denial of the adoption herein has the effect of knocking the train off the tracks at station 3 and precluding its arrival at station 4.

The 1996 amendment to K.S.A. 59-2144 (effective July 1, 1996—30 days prior to the filing of this action) may have been a factor in the trial court's decision to deny the adoption, although no reference is made thereto.

In 1994, K.S.A. 59-2144 was first enacted and provided:

"(a) When an adoption occurs in a foreign country and is recognized as a valid adoption by the immigration and naturalization service of United States department of justice, the adoptive parent or parents may petition the court, pursuant to K.S.A. 59-2128, and amendments thereto, for a subsequent adoption in the state of Kansas, pursuant to the applicable provisions of the Kansas adoption and relinquishment act, and amendments thereto. In an adoption under this section, the court shall recognize and give effect to the laws of the foreign country and proceedings conducted in accordance with the laws of the foreign country per-

taining to relinquishment, termination of parental rights and consent to the adoption.

"(b) If the adoption is granted, the adoptive parent or parents may request a birth certificate pursuant to K.S.A. 65-2423, and amendments thereto.

"(c) This section shall be part of and supplemental to the Kansas adoption and relinquishment act."

In 1996, K.S.A. 59-2144 was amended to read:

"(a) When a Kansas resident adopts a child in a foreign country in accordance with the laws of the foreign country pertaining to relinquishment, termination of parental rights and consent to the adoption, the decree of adoption or a similar document or documents which evidences finalization of the adoption in the foreign country, and evidence of lawful admission into the United States, when filed with and entered in the records of the clerk of the district court of any county in this state, has the same force and effect as if the decree of adoption, or a similar document or documents which evidences finalization of the adoption in the foreign country, was granted in accordance with the provisions of the Kansas adoption and relinquishment act.

"(b) When such decree or document is filed and entered, the adoptive parent or parents may request a birth certificate pursuant to K.S.A. 65-2423, and amendments thereto.

"(c) This section shall be part of and supplemental to the Kansas adoption and relinquishment act." K.S.A. 1996 Supp. 59-2144.

The legislative history of this 1996 amendment reflects that the purpose of the amendment was to simplify the adoption of foreign nationals—to eliminate the need for adoptive parents to go through a full Kansas adoption proceeding in order to secure just a Kansas birth certificate for the child when they already had a valid foreign adoption decree. As the sponsor of H.B. 2875, which amended K.S.A. 59-2144, Rep. Phyllis Gilmore testified, in part:

"This bill has been requested in order to simplify the foreign adoption process. Currently, after an adoption has been finalized in a foreign country an adoptive couple must go through another entire adoption process in Kansas to obtain a Kansas birth certificate for their child. The intent of this bill is to simplify obtaining the Kansas birth certificate by making it a clerical procedure. There would be no need for any judicial involvement.

"This would obviously save considerable time and money for the adoptive parents as well as allowing additional space in the court docket." Minutes of the House Committee on Judiciary, February 23, 1996, Attachment 1.

Obviously, parents who have adopted a child with an IR3 classification would benefit by the streamlined procedure for securing a birth certificate. However, because the purely clerical filing procedure under K.S.A. 1996 Supp. 59-2144 involves no judicial determination, petitioners contend that the mere filing of the Chinese adoption papers and the INS visa will not satisfy the INS requirements for the granting of citizenship to a child with an IR4 classification. Hence, they opted for the filing of a petition seeking a decree of adoption and appealed its denial. This was an unopposed proceeding. There is no one contending this interpretation of INS requirements is incorrect, and our research does not disclose that it is incorrect.

There is no indication that the adoption was denied by the trial court based upon K.S.A. 1996 Supp. 59-2144. In fact, the language employed in its holding indicates the petition was held to be deficient on its merits—namely, lack of consent, presumably by the birth parents or a Chinese official, and/or failure to institute an action to terminate the parental rights of the birth parents.

We believe that resolution of the issue herein does not depend upon whether or not petitioners' contention that a filing under K.S.A. 1996 Supp. 59-2144 is insufficient for INS naturalization purposes is correct. The preceding discussion is necessary, however, for a full understanding of this case in view of the existence of a statute which would appear to offer a simple expedited procedure for accomplishing what petitioners seek.

The legislature may well desire to reexamine K.S.A. 1996 Supp. 59-2144 to determine if it truly reflects the intended legislative purpose behind its enactment.

We turn now to the merits of the appeal. Did the trial court err in denying the petition for the adoption? Although stated with little specificity, the trial court's basis for denial lay in perceived defects in the area of W.J.'s eligibility for adoption—her adoptability. The trial court's stated rationale is repeated for convenience, as follows:

"The Court is going to deny the adoption without consent. In addition, no action to terminate parental rights has been made. The Court notes that the child was returned [*sic*] to the United States under the IR4 designation of Immigration and Naturalization. The parties should note that consent to the adoption has to be

given by a proper party vested under Kansas statute, and no such consent has been received. Therefore, the matter will be denied and dismissed with prejudice.
. . . .
"I would urge you to look at the statute. There's several different ways of doing it correctly. We will stand in recess."

The trial court's reference to the lack of an action to terminate parental rights and improper consents to the adoption must refer to the failure to institute an action to terminate the parental rights of the birth parents and the Chinese consent to the adoption.

K.S.A. 59-2117 addresses, *inter alia*, a consent executed and acknowledged outside of Kansas:

"(a) A consent or relinquishment executed and acknowledged outside of this state, either in accordance with the law of this state or in accordance with the law of the place where executed, is valid.

"(b) Where a consent or relinquishment is signed in a foreign country, the execution of the consent or relinquishment shall be acknowledged or affirmed in accordance with the law and procedure of the foreign country."

Presented to the court was a Chinese decree of adoption stating when and where W.J. had been abandoned and that her parents were unknown. The head of the orphanage where she had been abandoned was named and was a party to the proceedings. The Chinese government was obviously satisfied that, under Chinese law, W.J. was eligible for adoption when it granted the adoption to Mr. and Mrs. C. and when it issued her passport to travel to the United States. INS was required by law to investigate the validity of the Chinese proceedings before issuing its visa to W.J. to enter the United States with an IR4 classification.

There is no indication of any red flags anywhere even hinting at any defects or insufficiencies in W.J.'s Chinese adoption proceedings or her INS admission under INS regulations. Nothing was said nor was evidence admitted at the hearing herein raising any doubt as to the propriety of W.J.'s adoption or admission to the United States. Likewise, there was nothing offered or even alluded to at the hearing which would cast any doubt or question as to the petitioners being anything less than ideal adoptive parents. The home study herein prepared by a licensed social worker glows with favorable findings. Both petitioners testified, and there is nothing

suspect in their testimony nor did the trial court find that there was.

Uncontradicted evidence which is not improbable or unreasonable is ordinarily regarded as conclusive and cannot be disregarded unless it is shown to be untrustworthy. *Anderson v. Kinsley Sand & Gravel, Inc.*, 221 Kan. 191, Syl. ¶ 2, 558 P.2d 146 (1976). See also *Demars v. Rickel Manufacturing Corporation*, 223 Kan. 374, 380, 573 P.2d 1036 (1978) (workers compensation); *Berry v. Wondra*, 173 Kan. 273, Syl. ¶ 3, 246 P.2d 282 (1952) (oil and gas lease).

The trial court's rationale shows it wholly disregarded the determinations of the Chinese government and the INS as to W.J.'s adoptability and, in essence, would require the petitioners to return to square one and establish W.J.'s adoptability as though these prior determinations had not been made. Our adoption statutes do not indicate any such legislatively intended procedure. Clearly, the legislature has attempted to simplify transnational adoptions. We therefore conclude that the trial court's disregard of the Chinese government's procedures and determinations was error where nothing in the record raised any questions as to W.J.'s adoptability.

As previously noted, the trial court made no finding that the petitioners were unsuitable adoptive parents for W.J., and indeed, the record shows them to be highly qualified in all respects. Under the circumstances, we conclude the trial court erred in denying the petition for adoption.

The judgment of the district court is reversed, and the case is remanded with directions to enter the decree of adoption in favor of petitioners, including the requested name change for W.J.