(46 P.3d 1222)

No. 87,327

THOMAS B. MULLINS, *Appellant*, v. STATE OF KANSAS, *Appellee*.

Opinion filed May 24, 2002.

*Jean K. Gilles Phillips*, of the Paul E. Wilson Defender Project, University of Kansas School of Law, of Lawrence, for appellant.

*Frank E. Kohl*, county attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before LEWIS, P.J., ELLIOTT and MARQUARDT, JJ.

ELLIOTT, J.: Thomas B. Mullins was convicted of aggravated criminal sodomy and aggravated indecent liberties with a child. On appeal, the convictions were affirmed, but the Supreme Court ordered that the conviction of and sentence for aggravated indecent liberties must be for aggravated incest. The sentences for both counts were remanded for proper sentencing. See *State v. Mullins*, 267 Kan. 84, 98-99, 977 P.2d 931 (1999).

Mullins then filed the instant K.S.A. 60-1507 motion, alleging ineffective assistance of counsel. The motion was denied after an evidentiary hearing, and Mullins appeals. We reverse and remand.

As background, three details from the Supreme Court opinion need highlighting. First, there were no visual signs of sexual abuse and no witnesses to the alleged offenses. As a result, Mullins was convicted "primarily based upon the testimony of [the victim]." *Mullins*, 267 Kan. at 85. Second, Pat Phillips of the KU Medical Center testified the victim's physical exam was normal, but "physical indications of anal penetration were not present in 60 to 80 percent of the children sodomized." 267 Kan. at 87-88. Third, at trial Mullins called no expert to rebut the testimony of nurse Phillips or of the victim.

At the 1507 hearing, Mullins called three witnesses; the State called none and did minimal cross-examination of the witnesses called by Mullins. A brief summary of the 1507 testimony follows:

### Matthew O'Connor

Matthew O'Connor, a criminal defense attorney admitted in Missouri and Colorado, testified as an expert witness regarding the defense of sexual abuse cases. He has been involved in litigating about 40 sexual abuse cases.

O'Connor testified the criminal defense attorney must become familiar with the techniques of child interviews because that is where the majority of mistakes or tainting occurs—most obviously with the use of leading questions. Numerous experts are available on the standards for child interview techniques, according to O'Connor.

O'Connor opined that Mullins' trial counsel did not adequately challenge the State's experts; one of the largest failures was the failure to find the study on which nurse Phillips relied for her testimony.

O'Connor also stressed the need for the defense attorney to either procure an expert for trial or to utilize one in preparation for cross-examination. In that way, the defense can challenge the child victim's testimony without having to directly attack the child's credibility. Rather, the defense could argue the interview process was

flawed or tainted by improper techniques and, therefore, the child victim was mistaken.

O'Connor also testified the necessity of having a defense expert was common knowledge among criminal defense attorneys at the time of Mullins' trial and that there could be no valid trial strategy in failing to call or utilize an expert in this type of case.

On inquiry from the 1507 judge, O'Connor testified he would be surprised if Mullins would have been convicted had trial counsel challenged the interview techniques used by State investigators through the aid of an expert and if trial counsel had challenged nurse Phillips' testimony with respect to her opinion of the low occurrence of physical findings in young males who have been anally abused.

The State's short cross-examination of O'Connor shed no new light on his testimony.

### Robert Sanders

Robert Sanders is a psychologist and was qualified as an expert on the subject of interviewing children who have alleged sexual abuse.

Sanders testified an interviewer of a child must not have a "confirmatory bias"—defined as existing when the interviewer believes the accused is guilty. In this situation, the inquirer will neglect information tending to cast doubt on the person's guilt and focus only on information supporting guilt.

Sanders discussed the three interviews given by the victim prior to trial. With respect to the first (initial disclosure to mother and stepfather), there was simply not enough information to evaluate the reliability of this interview.

The next disclosure was to the police and consisted mainly of the victim's mother's handwritten notes transcribing what the victim told her. Sanders was quite concerned with the extensive involvement of the mother and that the victim would see the police officer (Jarowitz), see *Mullins*, 267 Kan. at 87, as an extension of the adult system which does not like Mullins and with which the boy should cooperate. Sanders opined that the victim was in the

"performance" mode during the entire interview and, thus, the disclosure was unreliable.

The last interview was with Detective Kitchens and Monica Mendoza of SRS. See *Mullins*, 267 Kan. at 87. Sanders expressed several concerns about this interview—including the fact there were two interviewers in an official setting, reinforcing the victim's need to cooperate and tell the adults what they wanted to hear.

Sanders was also critical of the interview technique, especially when the victim did not go along with a suggestion and actually corrected Mendoza. Instead of exploring the development, Mendoza changed the subject by asking about a police report already made by the victim. Sanders concluded that the disclosures made during this interview were not reliable.

Sanders then concentrated on the interview and physical examination of the victim done by nurse Phillips. See *Mullins*, 267 Kan. at 87-88. Sanders found the disclosures made were also unreliable because there was no transcript of the interview—only a written report. Sanders could not discern the relationship between the interview and the written report.

Finally, Sanders discredited nurse Phillips' testimony at trial, finding serious flaws in the study on which she relied. Sanders found nothing in the study to relate to the case being tried.

The State's cross-examination shed no new light on Sanders' testimony.

### Kevin Reardon

Kevin Reardon was Mullins' counsel at the criminal trial. At the time of his appointment, he had litigated less than 10 felonies to jury verdict, none of them being a sexual abuse case. Reardon did not remember specifically looking at the issue of child interview techniques in any depth.

Reardon did not interview the victim's pediatrician or mental health providers and nothing indicates that he interviewed any of the State's witnesses prior to trial. He could not recall looking into the possibility of hiring experts to conduct independent exams or to review the exams done by State's witnesses. He did not look into the possibility of hiring his own expert even though he had "gen-

eral" concerns with the manner in which the Kitchens/Mendoza interview was conducted.

Reardon testified he was aware someone from the Children's Center at the KU Medical Center would testify and that personnel at the Children's Center believed what children told them and were very strong children's advocates. But he did not interview any of the potential witnesses from the Children's Center prior to trial.

Reardon also testified he had no opportunity to investigate hiring an expert to review the Children's Center procedures because he got the report during voir dire. The record, however, discloses that during the preliminary examination (held some 15 months prior to trial), he cross-examined Mendoza about the contents of nurse Phillips' report.

Reardon expressed surprise when informed the study relied on by nurse Phillips cited a further study which concluded that 83% of boys who suffered anal sodomy do show physical signs of the abuse.

Finally, Reardon testified to his lack of time and resources needed to defend Mullins. He concluded by conceding that in hindsight and with adequate resources, he would have hired an expert with respect to child interview techniques and that he had not focused on that part of the case as much as he should have.

The State's cross-examination revealed little additional information.

### Trial court's 1507 decision

The trial court noted that Reardon had secured a psychological evaluation and polygraph examination of his client; reviewed the victim's school, medical, and counseling records; and expended 122.9 hours in defending Mullins.

The trial court found Reardon had "provided honest, loyal, genuine and faithful representation" and concluded:

"Hindsight is 20/20. The art of defending people charged with child molestation has evolved in the past five years, particularly as a result of a few highly publicized cases in the national media. Perhaps Mr. Reardon should have attempted to secure expert testimony to counter the evidence presented by the investigating officers, social workers, and Ms. Phillips *but few attorneys would have done so at the time.*" (Emphasis added.)

## Analysis

Defendants charged with crimes are guaranteed "reasonably effective" legal assistance. *Strickland v. Washington,* 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052, *reh. denied* 467 U.S. 1267 (1984). The two landmark cases on the subject are *Strickland* and, in Kansas, *Chamberlain v. State,* 236 Kan. 650, 694 P.2d 468 (1985).

A defendant must show counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defendant. *Strickland,* 466 U.S. at 688, 694. Further, counsel's performance must be evaluated for "reasonableness under prevailing professional norms." 466 U.S. at 688.

The prejudice prong of *Strickland* requires the defendant to show there is a reasonable probability that, but for counsel's errors, the result would have been different. A "reasonable probability" is defined as a probability sufficient to "undermine confidence in the outcome." *Chamberlain,* 236 Kan. at 657.

On appeal, while we do not reweigh the testimony or the credibility of witnesses, our review of the performance and prejudice prongs of an ineffective assistance of counsel claim is plenary as these are mixed questions of law and fact. *State v. Orr,* 262 Kan. 312, 322, 940 P.2d 42 (1997).

Here, Mullins raises two claims of ineffective assistance of counsel: failing to consult or procure an expert on the subject of interviewing techniques and failing to properly prepare for the cross-examination of nurse Phillips.

With respect to the first claim of ineffective assistance of counsel, we note that the decision of whether to call or not call a certain witness is a matter of trial strategy. See *Winter v. State,* 210 Kan. 597, Syl. ¶ 2, 502 P.2d 733 (1972).

On the other hand, defense counsel cannot make a strategic decision against pursuing a line of investigation when he or she has not yet obtained facts upon which that decision could be made. *Kenley v. Armontrout,* 937 F.2d 1298, 1308 (8th Cir. 1991).

Further, when counsel lacks the information to make an informed decision due to inadequacies of his or her investigation,

any argument of "trial strategy" is inappropriate. *Clay v. State*, 954 S.W.2d 344, 349 (Mo. App. 1997); see *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).

Thus, our initial question is this: Was Reardon's decision not to consider hiring an expert, either for use at trial or for use in preparation of cross-examination of the State's witnesses, and to abandon all inquiry into interview techniques, objectively reasonable?

We must conclude trial counsel's performance was deficient. The trial court concluded the art of defending child sexual abuse cases had "evolved" and that while counsel perhaps should have attempted to secure an expert, "few attorneys would have done so at the time."

Simply put, this finding of fact is without any support in the record. O'Connor testified to the exact opposite—that the use of experts in this type of case was crucial and that fact was well known *at the time* of *Mullins'* criminal trial. That testimony stands uncontroverted. Trial courts cannot disregard uncontroverted testimony unless it is shown to be untrustworthy. See *In re Adoption of W.J.*, 262 Kan. 788, 795, 942 P.2d 37 (1997).

Here, there was no showing of strategic reasons for counsel's failure to consult or procure an expert. Trial counsel's performance was objectively unreasonable, and the first prong of *Strickland* and *Chamberlain* was met.

We must, therefore, determine whether Mullins was prejudiced by the deficient performance. The trial court, of course, did not analyze the prejudice prong of the *Strickland/Chamberlain* test.

As noted on direct appeal, Mullins was convicted primarily on the testimony of the victim. *Mullins*, 267 Kan. at 85. Trial counsel's failure to challenge the reliability of the victim's prior disclosures, as above described, severely hampered the ability to challenge the victim's testimony at trial.

Had trial counsel procured the services of an available expert regarding proper interview techniques, the jury would have been presented with relatively strong evidence to potentially undermine the allegations of abuse (such as testimony of Dr. Sanders). At trial, the jury would have heard evidence of the "performance mode" and that the victim was deeply entrenched in this mode at trial.

However, because trial counsel failed to present (or even search for) such available expert testimony, the jury heard only the victim's unchallenged allegations of abuse—bolstered by the testimony of nurse Phillips that the victim had not been coached, found to be improper by the Supreme Court on direct appeal. See *Mullins*, 267 Kan. at 88.

Under the *Strickland/Chamberlain* test, the benchmark is whether counsel's conduct so undermined the proper functioning of the adversary process that the trial cannot be relied on as having produced a just result. *State v. Brown*, 266 Kan. 563, 577, 973 P.2d 773 (1999).

In the present case, we must conclude the adversary process was so broken down by the failure of trial counsel to consult and/or procure an expert witness that we are compelled to hold the trial court erred in denying Mullins' 1507 motion. We are compelled, primarily, on the essentially uncontroverted record at the 1507 hearing. For whatever reason, the State presented no evidence, no witnesses, and did little cross-examination of Mullins' witnesses to provide the trial court any support for determining Mullins' trial counsel was effective. See *Cellier v. State*, 28 Kan. App. 2d 508, 523, 18 P.3d 259, *rev. denied* 271 Kan. 1035 (2001).

Accordingly we reverse the trial court's judgment and remand with directions to set aside the conviction and grant a new trial to Mullins. See K.S.A. 60-1507(b).

Mullins also faults trial counsel for failing to review the study nurse Phillips cited in her testimony before trial and to be ready to rebut it. This complaint necessarily relates back to the failure to properly investigate. And as noted before, trial counsel was aware of nurse Phillips' report at the preliminary hearing, some 15 months before trial.

Standing alone, we are unable to hold that Mullins suffered the requisite prejudice by counsel's failure to counter nurse Phillips' testimony and report. As detailed above, Mullins was convicted primarily on the testimony of the victim.

By itself, there is no reasonable probability the result of the trial would have been different had defense counsel presented evidence to counter nurse Phillips' testimony. On the other hand, we cannot

separate the two claims of error due to the intertwining of the factual basis of the two claims. This second claim adds to the cumulative effect of the trial errors. See *State v. Bedford*, 269 Kan. 315, 332-33, 7 P.3d 224 (2000).

Finally, the State's reliance on *State v. Gardner*, 272 Kan. 706, 36 P.3d 229 (2001), is misplaced. There, neither prong of *Strickland* was met because defendant's argument was founded on sheer speculation and there was simply no showing of prejudice. 272 Kan. at 709.

Reversed and remanded with directions to grant the K.S.A. 60-1507 motion, set aside Mullins' convictions, and grant a new trial.