NOT DESIGNATED FOR PUBLICATION

No. 119,886

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RODNEY S. KOCH,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; KEVIN P. MORIARTY, judge. Opinion filed July 26, 2019. Affirmed.

*Jessica J. Sokoloff*, of Olathe, for appellant.

*Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., GREEN and POWELL, JJ.

PER CURIAM: Rodney Koch appeals the district court's denial of habeas corpus relief based on the claim that his trial attorney did an inadequate job. After it heard testimony from Koch's trial attorney, the district court found that the attorney had valid reasons not to call the additional witnesses Koch now says could have been called to help his case at trial. And the district court also concluded that even if the attorney should have called those witnesses, that wouldn't have changed the trial result. Substantial evidence supports the district court's conclusions, and we therefore affirm its judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Koch claims that the ineffective representation of trial attorney, Carl Cornwell, led to Koch's 2004 conviction for attempted second-degree murder and aggravated robbery. In the direct appeal for that criminal case, our court summarized the case as shown at trial:

> "In September 2001, a man with a shotgun came into a Minute Mart convenience store in Overland Park and demanded money. A man named Karin Khetani, working at the Minute Mart that evening, complied. As the robber started to leave the store, he turned around and fired the shotgun at Khetani. The blast hit some medicine boxes first and then the pellets hit Khetani in the chest and arm. Khetani called 911 and asked for police and an ambulance. Various witnesses later said the robber left the scene in an older, white Jeep Cherokee.

> "Later in September 2001, Rodney S. Koch and his half-brother, Christopher Koch, were arrested after an armed robbery and police chase in California. Nicole Koch, Rodney's wife, and Christina Koch, Christopher's wife, both identified Rodney Koch as the person in a surveillance video and some photographs that were taken at the time of the robbery of the Minute Mart. Koch was charged with aggravated robbery and attempted first-degree murder. After his return to Kansas from California, Koch was convicted of aggravated robbery and attempted second-degree murder." *State v. Koch*, No. 95,069, 2008 WL 183321, at *1 (Kan. App. 2008) (unpublished opinion).

The district court sentenced Koch to serve 168 months in prison to be served consecutively to his sentence in California for the crimes committed there.

In April 2009, Koch filed a habeas corpus motion under K.S.A. 60-1507. As relevant here, the motion alleged that Cornwell failed to conduct an appropriate pretrial investigation, failed to properly prepare a defense, and failed to contact key defense witnesses. In October 2009, the district court ruled that Koch's allegations merited an

evidentiary hearing. But the court held since Koch was then serving his California, there was no way a Kansas court could order him brought here for a hearing until he completed the California sentence. So the evidentiary hearing was postponed until Koch was sent to Kansas to serve his sentence here.

The district court held an evidentiary hearing on February 1, 2016. The court heard testimony from Cornwell, Koch, and Shawn Minihan, the attorney who had represented Koch in his direct appeal.

From the beginning of his case, Koch maintained his innocence and his defense centered on his alibi that he was with friends at the time of the robbery and could not have committed the crime. He provided Cornwell with the contact information for Mark Cravens, Jody Kieft, and a woman named Brenda, whom he claimed to have been with the night of the robbery. Koch insisted that he discussed the significance of his alibi witnesses several times with Cornwell and provided their contact information at each meeting. He claims with each conversation, Cornwell assured him an investigator was locating the witnesses and they would be ready before trial. Koch contends he did not know Cornwell had not secured any alibi witnesses until after he had testified at trial and the defense rested.

Cornwell testified that he did not have an independent recollection of the efforts he and his office staff put forth to locate and secure the alibi witnesses since the trial took place nearly 12 years before the habeas hearing. He said that he usually destroyed case files after 7 to 10 years, but he kept Koch's file longer upon Koch's request. But this file was destroyed one or two years before the hearing when Cornwell moved his office.

Cornwell testified Kieft was part of the case as she was allegedly in the Jeep during the Overland Park and California robberies. Although he did not remember what efforts might have been made to secure Kieft for trial, he said that because of her

3

involvement, he felt that, if called to testify, she would have done more harm than good and that not calling her was a matter of trial strategy.

Cornwell confirmed that Cravens' testimony would have made him a significant alibi witness. He said that he had no independent memory of talking to Cravens though he believed he may have. Koch said he advised Cornwell to call Cravens at night and testified that Cravens did not answer calls from phone numbers he did not recognize, did not return calls to numbers he did not recognize, and did not have an answering machine. Cornwell said his best memory was that he couldn't reach the witnesses by phone. Consistent with that, in April 2004, Cornwell had mailed Koch a letter saying that Cornwell had been unable to reach the witnesses; he suggested that the alibi witnesses contact him instead.

The district court denied relief. It concluded that Koch had neither shown inadequate representation nor prejudice, while both were requirements for relief:

> "Mr. Koch's request for a new trial is DENIED. This Court cannot find that Mr. Cornwell's performance was deficient as established by case law. Additionally, if Mr. Cornwell's performance could possibly be viewed to be deficient, this Court cannot find that Mr. Koch was prejudiced because of the overwhelming evidence presented against him at trial. The identification by Mr. Koch's wife and his sister-in-law in the surveillance tapes of the robbery makes it extremely difficult to present an alibi defense, especially when one of the witnesses is believed to [have] be[en] with Mr. Koch at the time of the crime."

Koch then appealed to our court.

4

*Standards to Guide Our Review*

To prevail on a claim of ineffective assistance of counsel, a defendant must establish to things: (1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, by which we mean that there's a reasonable probability the jury would have reached a different result absent the deficient performance. See *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014) (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]).

After a full evidentiary hearing on a habeas motion, an appellate court reviews the district court's findings of fact to determine whether they are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. Our review of the district court's ultimate conclusions of law is de novo. *State v. Adams*, 297 Kan. 665, 669, 304 P.3d 311 (2013).

In both the district court and on appeal, judicial scrutiny of an attorney's performance is highly deferential and requires consideration of all the evidence before the judge or jury. We presume that counsel's conduct fell within the broad range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). The defendant's trial attorney is responsible for making tactical and strategic decisions, including which witnesses testify. *Flynn v. State*, 281 Kan. 1154, Syl. ¶ 5, 136 P.3d 909 (2006). Strategic choices based on a thorough investigation of the law and facts are rarely second-guessed. 281 Kan. 1154, Syl. ¶ 5.

*Discussion of the Ineffective-Assistance Claim*

Koch claims that he presented enough evidence to show that Cornwell's performance fell below the objective standard of reasonableness. Koch argues that Cornwell failed to investigate and call alibi witnesses and that the district court's ruling to the contrary is unsupported by the evidence. Koch says that Cornwell had six months during which he could have hired an investigator (using funding from the Board of Indigents' Defense Services) who would have been able to contact the witnesses since Koch had provided Cornwell their contact information. Koch contends Cravens would have testified that they were together with Kieft and Brenda the evening of the robbery and Kieft would have corroborated Cravens' testimony.

Koch never knew Brenda's last name, and his argument on appeal is limited to the claim that Cornwell should have called Kieft and Cravens. Koch argues that Cornwell's decision not to call these witnesses can't be considered a strategic decision because Cornwell didn't adequately investigate their potential testimony. And Koch claims the failure to call these witnesses led to his convictions.

We disagree. We will consider separately the testimony of Kieft and Cravens.

There's evidence to support the district court's conclusion that Cornwell's investigation was adequate to determine whether to call Kieft. Though Cornwell did not contact Kieft, Cornwell reasonably concluded that she would have been more harmful than beneficial as a witness. As the district court determined, "[A]nybody that's a qualified attorney would not call her as a witness." The court reasoned that the evidence showed Kieft was in the Jeep during the car chase and wreck in California shortly after the armed robbery for which Koch and Christopher were charged here. The court noted Kieft "would have some baggage on that situation." And Christopher testified that Kieft was in the Jeep with him while Koch committed the Overland Park robbery and that they

6

then stayed in a hotel room registered in Kieft's name and smoked crack cocaine all night before deciding to go to California. Because of Kieft's alleged proximity to both robberies, the risk to Koch's defense would have been great considering the little benefit her testimony could have provided.

It's harder to determine whether Cornwell's performance was deficient on the decision not to call Cravens; Cornwell had no specific memory of his attempts to secure Cravens for trial. Even so, an ineffective-assistance-of-counsel claim can be disposed of solely on the grounds that the defendant failed to establish that he suffered prejudice. *Edgar v. State*, 294 Kan. 828, 843, 283 P.3d 152 (2012). The district court pointed out that Koch didn't call Cravens as a witness at the evidentiary hearing. Koch didn't even provide an affidavit from Cravens to support the assertion that he would have provided convincing alibi testimony. Koch testified that he had not had contact with Cravens since February 2004. But while Koch complains that Cornwell had six months to find Cravens and secure his testimony, Koch has had years to do so. Instead, Koch relied only on his own testimony about what he believed Cravens would have testified to. Speculation like this is generally insufficient to meet the burden of proof to establish prejudice. *State v. Speer*, No. 115,632, 2018 WL 4039457, at *11 (Kan. App. 2018) (unpublished opinion) (citing *Mullins v. State*, 30 Kan. App. 2d 711, 719, 46 P.3d 1222 [2002]), *rev. denied* 309 Kan. ___ (April 29, 2019). Additionally, the district court concluded that the evidence against Koch was overwhelming; that too is supported by the record. Christopher testified Koch carried out the robbery, and Christopher's and Koch's wives both testified that the robber in the surveillance video was Koch. *Koch*, 2008 WL 183321, at *1.

The district court's conclusion that Cornwell's decision not to follow up with Kieft to secure her testimony at trial was strategic is supported by the evidence: the potential harm from her testimony outweighed any potential benefit to his defense. And though the lapse in time and destroyed case file complicate any court's ability to say definitively whether Cornwell's performance was deficient in pursuing testimony from Cravens, Koch

failed to show that he suffered prejudice as a result. Koch's speculation about what Cravens would have said cannot meet the burden of showing prejudice. Koch failed to show any reasonable probability the jury would have reached a different result if Cravens would have testified.

We therefore affirm the district court's judgment.