NOT DESIGNATED FOR PUBLICATION

No. 128,055

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JUAN ALEJANDRO FLORES,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Oral argument held November 18, 2025. Opinion filed May 1, 2026. Affirmed.

*Jonathan Sternberg*, of Jonathan Sternberg, Attorney, P.C., of Kansas City, Missouri, for appellant.

*Kristi D. Allen*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before PICKERING, P.J., SCHROEDER and HURST, JJ.

PICKERING, J.: Juan Alejandro Flores appeals from the district court's denial of his K.S.A. 60-1507 motion alleging ineffective assistance of trial counsel. Flores claims trial counsel failed to impeach the State's witnesses and failed to interview or call Flores' alibi witnesses. After review, we find Flores failed to demonstrate that trial counsel was ineffective and affirm the district court.

FACTUAL AND PROCEDURAL BACKGROUND

On January 13, 2017, Sandra Torres was in her kitchen when three armed masked men entered her home. At the time, she was getting ready for work and had planned to leave at 8:45 a.m. Before the men entered her home, she had gone outside to start her car and failed to lock her door when she reentered her home.

When the three men were in the home, Torres' boyfriend, Alan Ortiz, heard commotion from his bedroom and came out to investigate. One of the men attempted to grab the chain around Ortiz' neck, and Ortiz pushed the man away. The man hit Ortiz in the back of the head with his gun and shot Ortiz in the abdomen. The three men then fled, and Torres called the police. Torres repeatedly identified "Alex Flores" (Flores goes by the name of Alex) as the shooter to the law enforcement officers who arrived on the scene. Ortiz also identified Flores as the shooter to the officers who arrived on scene. Soon after Ortiz was shot, Torres told Ortiz who shot him, and Ortiz later recognized the shooter as Flores from his voice.

The State charged Flores with four felonies: (1) aggravated burglary; (2) attempted aggravated robbery; (3) aggravated battery; and (4) unlawful possession of a firearm by a felon. The district court appointed counsel for Flores.

*Flores' First Trial*

At the first trial, Torres' identification of Flores played a central role. Torres described Flores as thinking "the mask was covering his face," but it did not cover his entire face. Even though all the men wore masks, Torres testified that she recognized Flores as the shooter based on his tattoos and voice. She also recognized Flores' voice from Facebook voice messages he had sent her.

2

Torres testified that she had called the police multiple times on Flores for other occasions. She first recognized Flores from an earlier confrontation involving Ortiz, Flores, and a group of men. Torres also told officers about another encounter when Flores entered her home by forcibly kicking in her door. At trial, trial counsel cross-examined Torres on her identification of Flores' voice from the break-in, and Torres denied telling officers in her interview that the voice sounded familiar from the previous break-in.

Wichita Police Detective David Alexander testified that, when he interviewed Torres, she discussed the break-in and how she identified the voices of the offenders in this incident from the previous break-in. Alexander believed Torres conveyed, when explaining the break-in, that she was actually present when her residence was broken into and that she recognized Flores' voice because she had been present. In fact, there was no police report of any prior home invasion, but Detective Alexander did find a break-in which he described as just a simple burglary with no witnesses.

Flores' first trial ended in a mistrial after the jury could not reach a unanimous decision. After the first trial, trial counsel and the prosecutor spoke to the jury, and the jury did not seem very focused on this inconsistency. Based on the jurors' statements, trial counsel believed that Torres' descriptions of Flores' tattoos resonated with the jurors in the first trial.

*Flores' Second Trial*

At Flores' second trial, the State asked the district court to prohibit trial counsel from questioning Torres about her inconsistent statement about the prior break-in because it violated a motion in limine and K.S.A. 60-455. The district court found Torres' statement was not K.S.A. 60-455 evidence but found that the statement was an inconsistent statement that was inadmissible without an evidentiary basis. Trial counsel did not research how to respond to the order in limine regarding the inadmissibility of

3

Torres' inconsistent statements, make an evidentiary proffer, or preserve the issue for appeal. Trial counsel understood the district court's ruling on the State's oral motion to exclude Torres' prior inconsistent statement to mean that if the State did not bring up the break-in on direct examination, then trial counsel could not bring up the subject during cross-examination. Because of this, trial counsel did not ask Torres about her statements to law enforcement during cross-examination and did not recall Torres to testify.

As the State's witness, Torres testified that she could only identify one of the masked men because his mask only covered his face from his cheeks down to his chin. Torres recognized this man because of a tattoo on his face. Torres testified that she had been around Flores only once before but recognized his voice from Facebook voice messages he had sent her. Torres testified that she was "100 percent" sure the shooter was Flores. She also testified that she could recognize Flores based on his eyes and eyebrows, not only his tattoo.

During trial counsel's cross-examination of Torres, trial counsel pointed out different descriptions from Torres about Flores' mask; Torres' description of Flores' tattoo as a dollar sign when Flores' tattoo is the number 22; and Torres' inconsistent identification of one of the masked men as having a Russian accent before telling officers that she thought the accent was Puerto Rican.

The State did not present any physical evidence linking Flores to the offense and relied on eyewitness testimony from Torres and Ortiz. The second jury convicted Flores of aggravated burglary, attempted aggravated robbery, aggravated battery, and criminal possession of a weapon by a convicted felon.

The district court sentenced Flores to a total prison term of 249 months, with 36 months of postrelease supervision. Flores directly appealed, and another panel of this

4

court affirmed his convictions. *State v. Flores*, No. 119,481, 2019 WL 4725385, at *7 (Kan. App. 2019) (unpublished opinion).

*Flores' K.S.A. 60-1507 Evidentiary Hearing*

Flores timely filed a K.S.A. 60-1507 motion claiming trial counsel was ineffective for two reasons: (1) failing to question and impeach Torres at the second trial; and (2) failing to investigate and call three alibi witnesses.

The district court held an evidentiary hearing regarding Flores' allegations, where the three alibi witnesses, Flores, and Flores' trial counsel testified. The three alibi witnesses testified that Flores was at home on the morning of the incident. Flores testified that he only met with trial counsel a few times before court hearings and those meetings lasted only 10 minutes. Flores stated his trial counsel told him that he had not interviewed the alibi witnesses but that he would conduct the interviews. Flores had instructed trial counsel to call the alibi witnesses at the second trial, but the alibi witnesses did not testify, and trial counsel never explained to Flores why the witnesses did not testify.

Trial counsel testified that he had 27 years of experience as a criminal defense attorney. The main evidence against Flores was the direct testimony of Torres and Ortiz. Trial counsel attempted to use evidence of the inconsistency between Torres' identification of Flores' voice from the previous break-in and Alexander's testimony that the police report indicated Torres was not present at the prior break-in, but trial counsel believed it violated the district court's order.

Trial counsel explained he did not perform any legal research as to whether he could introduce this inconsistent testimony because he believed it to be a common evidentiary issue that he understood. He also did not make an evidentiary proffer or an argument for why the inconsistency should be allowed in. Trial counsel did not view

5

Torres' testimony as inconsistent at the second trial; he viewed it as an "inconsistent statement relating to an unrelated event." Trial counsel also acknowledged he could have made an evidentiary proffer of Torres' and Alexander's testimony to preserve the issue.

For both trials, trial counsel had filed a notice of alibi after learning from Flores and Flores' girlfriend of three alibi witnesses. The alibi witnesses were Veronica Chavez Trujillo, Flores' grandmother; Anjelica Vasquez, Flores' first cousin; and John Pando, Flores' uncle. Flores, Trujillo, Vasquez, and Pando shared a one-bedroom apartment. At Flores' K.S.A. 60-1507 hearing, all three witnesses testified that trial counsel did not interview them.

Trujillo would have testified that, when she woke up around 8 to 8:15 a.m., Flores was asleep on the couch in the same room. She testified that Flores must have left the apartment between 9 to 9:30 a.m. but also that Flores was still home when Pando left at 9:30 a.m.

Vasquez would have testified that she saw Flores in their apartment between 8:30 and 9 a.m. when she was getting ready for work. She testified that Flores "was sleeping, 100 percent," but he left the apartment around 9:15 a.m. Pando would have testified that he saw Flores between 9 and 9:30 a.m. Pando testified that he left the house between 9 and 9:30 a.m. and Flores must have left the apartment after 9:30 a.m.

Trial counsel testified, "It would be possible that I did not have a direct interview. I do know for a fact that I had an investigator." His understanding of what the witnesses would say came mostly from Flores and Flores' girlfriend but also "a number of factors, including an investigator." Neither Flores nor the State asked the witnesses whether an investigator interviewed them.

6

Trial counsel explained his general preference for third-party investigators to interview witnesses, which ensured he did not become a witness. Trial counsel did not admit that he did not interview the alibi witnesses; he alluded to either him or an investigator interviewing the alibi witnesses. He testified that the investigator interviewed Pando, but trial counsel's file from Flores' trial did not contain any investigator's report or documentation for any of the alibi witnesses.

Trial counsel stated he was aware of the alibi witnesses and what those witnesses would say, but his trial experience taught him to be careful of alibi witnesses. When asked what the alibi witnesses would say, trial counsel stated, "I believe that on the morning of the incident it would be that Mr. Flores was at home at their apartment that's listed." At the evidentiary hearing, trial counsel was not present during the testimony of the alibi witnesses.

Trial counsel explained that his experience taught him that a jury might weigh the credibility of an alibi witness against the credibility of the State's witness. He felt that the practical effect of using an alibi witness caused the jury to shift burdens.

Trial counsel believed it was hard for jury members to understand the jury's role when presented with alibi testimony—to hold the State to its burden of proof beyond a reasonable doubt—which made it difficult even if the jury believed the alibi witnesses. Trial counsel explained his wariness to use alibi testimony when the witness would be stating the defendant was elsewhere during the crime. He also testified he was cautious of using witnesses with close connections to the defendant because the jury may see the witnesses as biased.

Trial counsel testified that his strategy was to show Torres was motivated to mistakenly identify Flores rather than using alibi witnesses. He did not call the alibi

7

witnesses because of the practical effect of burden shifting, and he wanted the focus to be on the credibility of Torres' testimony.

On the first claim of ineffective assistance—failing to question and impeach Torres at the second trial—the district court found that trial counsel's strategy was objectively reasonable. The district court noted that trial counsel was experienced, trial counsel received an adverse judicial ruling that created potential dangers in trial counsel's strategy, and the first trial gave counsel a mock jury focus group to test his strategy. This allowed trial counsel to maximize his strategy in the second trial. In trial counsel's interview with the jury, trial counsel discovered that the testimony about the prior break-in "was not particularly compelling and did not meaningfully impact the jurors." But the jurors did focus on and found Torres' identification of Flores based on Flores' tattoos "stronger and more compelling" as evidence.

On the second claim of ineffective assistance—failing to investigate and call three alibi witnesses—the district court found that trial counsel's actions were objectively reasonable. The district court found that trial counsel did not interview the alibi witnesses but did investigate the alibi witnesses when trial counsel discussed the witnesses with Flores; obtained the witnesses' names and addresses; discussed with Flores and Flores' girlfriend what the witnesses would testify about—Flores sleeping in the apartment at the time of the crime; filed a notice of alibi and subpoenaed the witnesses; and hired an independent investigator to interview the witnesses. The district court noted that trial counsel took steps to investigate the possible alibi evidence, discussed the evidence with Flores, but made an objectively reasonable strategic decision not to call any of the alibi witnesses.

The district court found that Flores failed to prove prejudice. But the district court did not make specific findings for its reasoning on the prejudice prong. The district court

8

denied Flores' K.S.A. 60-1507 motion and found that Flores failed to meet his burden to show that trial counsel was unconstitutionally deficient.

Flores timely appeals.

ANALYSIS

*Standard of review and the rules we follow.*

After a full evidentiary hearing on a K.S.A. 60-1507 motion, the district court must issue "findings of fact and conclusions of law on all issues presented." Supreme Court Rule 183(j) (2026 Kan. S. Ct. R. at 242). An appellate court reviews the court's findings of fact to determine whether they are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. Appellate review of the district court's ultimate conclusions of law is de novo. *State v. Peters*, 319 Kan. 492, 499, 555 P.3d 1134 (2024).

"Claims of ineffective assistance of trial counsel are analyzed under the two-prong test articulated in *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and adopted by the Kansas Supreme Court in *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985). Under the first prong, the defendant must show that defense counsel's performance was deficient. If successful, the court moves to the second prong and determines whether there is a reasonable probability that, absent defense counsel's unprofessional errors, the result would have been different.

"To establish deficient performance under the first prong, the defendant must show that defense counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel must be highly deferential. A fair assessment of counsel's performance requires that every effort to be made to eliminate the distorting effects of hindsight, reconstruct the circumstances surrounding the challenged conduct, and

9

evaluate the conduct from counsel's perspective at the time. A court considering a claim of ineffective assistance of counsel must strongly presume that defense counsel's conduct fell within the wide range of reasonable professional assistance; that is, the defendant must overcome the strong presumption that, under the circumstances, counsel's action might be considered sound trial strategy.

"Under the second prong, the defendant must show that defense counsel's deficient performance was prejudicial. To establish prejudice, the defendant must show with reasonable probability that the deficient performance affected the outcome of the proceedings, based on the totality of the evidence. A court hearing a claim of ineffective assistance of counsel must consider the totality of the evidence before the judge or jury. A reasonable probability is a probability sufficient to undermine confidence in the outcome. [Citations omitted.]" *State v. James*, 319 Kan. 178, 184-85, 553 P.3d 308 (2024).

*Trial counsel made the strategic decision to discredit Torres on discrepancies in her testimony other than the prior inconsistent statement.*

Flores argues that trial counsel performed deficiently when trial counsel did not impeach Torres and failed to research whether the State or Torres opened the door to the impeachment evidence. Flores claims that this deficiency resulted in prejudice because Torres' credibility was the main issue at trial and a reasonable juror could find Torres not credible and vote to acquit Flores.

The State argues that trial counsel was not deficient because he pursued what he believed was the most relevant and compelling evidence and made a deliberate decision based on his experience. The State argues we should not view trial counsel's decision through hindsight. The State suggests that, even if trial counsel's performance was deficient, Flores was not prejudiced because trial counsel pointed out discrepancies in Torres' descriptions, but the jury still convicted Flores.

Certain decisions are for the accused, such as "'(1) what plea to enter; (2) whether to waive a jury trial; and (3) whether to testify.'" *Edgar v. State*, 294 Kan. 828, 838, 283 P.3d 152 (2012). Other decisions are strategic decisions for defense counsel, such as "'what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial motions should be made, and all other strategic and tactical decisions . . . .'" 294 Kan. at 838.

"'Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Peters*, 319 Kan. at 499. "[S]trategic choices made after an incomplete investigation can fall within the wide range of reasonable professional assistance if the decision to limit the investigation is supported by reasonable professional judgment." *State v. Hutto*, 313 Kan. 741, 750, 490 P.3d 43 (2021).

Defense counsel's informed decisions on "'whether and how to conduct cross examination . . . are matters of trial strategy.'" *Khalil-Alsalaami v. State*, 313 Kan. 472, 525, 486 P.3d 1216 (2021). Trial counsel's failure to impeach the credibility of the State's vital witness can prejudice the defendant and constitute ineffective assistance, but "counsel's failure to ask more specific questions related to a witness' prior inconsistent statements is not ineffective assistance when counsel discredits the witness in other ways." *Peters*, 319 Kan. at 500.

Here, in light of the order in limine and drawing from the events of the first trial, trial counsel made the strategic choice to discredit Torres by other means. The jury interview from the first trial informed trial counsel on how best to discredit Torres' testimony. That is, the jury interview revealed that the jury in the first trial was more concerned with Torres' poor descriptions of the tattoo than the inconsistency in the police report. Accordingly, trial counsel focused on Torres' descriptions of Flores. In fact, trial counsel's entire strategy hinged on pointing out inconsistencies in Torres' testimony.

11

Trial counsel did not fail to impeach or point out inconsistencies in Torres' testimony. Rather, he made Torres' inconsistencies his entire trial strategy. Trial counsel questioned Torres' credibility by: (1) pointing out the discrepancies between Torres' descriptions of Flores' mask; (2) showing the inconsistency between Torres' description of Flores' tattoo as a dollar sign when it was the number 22; and (3) pointing out Torres' poor voice recognition when she identified one of the men as having a Russian accent then changed her mind to a Puerto Rican accent.

Here, trial counsel did not provide ineffective assistance. He made a strategic choice based on the facts and his own experience as to how to conduct his cross-examination.

After receiving an adverse ruling and relying on the first trial as a guide for the second, trial counsel made the strategic choice to discredit Torres in ways other than the prior inconsistent statements. Flores fails to show that trial counsel's strategy fell below the objectively reasonable standard.

*Even if trial counsel's performance was deficient, Flores was not prejudiced.*

There is not a reasonable probability that the outcome of the trial would have been different even if we had found trial counsel's decisions were deficient. Flores' argument is that the entirety of the trial rested on Torres' testimony and the impeachment evidence, which would show that Torres could not have identified Flores based on his voice from the prior break-in because no one was present during that break-in. If Torres' sole basis for identifying Flores had been the previous break-in, then this impeachment evidence would be compelling. But this was not the evidence. Torres' ability to identify Flores came from multiple interactions with Flores, such as Facebook voice messages sent by Flores to Torres and Flores' Facebook profile pictures.

12

Although trial counsel's line of questioning and trial strategy were substantially the same as the first trial, at the second trial, the State was able to rehabilitate Torres on redirect. Specifically, the State had Torres identify Flores from a cropped Facebook picture depicting him wearing the same mask that Torres claimed he wore in the January break-in. This photo had not been used in the first trial because the State had decided not to admit "photographs or pictures from Flores' Facebook page." *Flores*, 2019 WL 4725385, at *2.

The district court supported its findings with substantial competent evidence that, based on the totality of the circumstances, trial counsel's decision not to impeach Torres was not prejudicial. See *James*, 319 Kan. at 185. Torres could identify Flores from Flores' tattoos and voice. Torres had previously interacted with Flores. Torres could identify Flores in multiple ways, and whether she was present at a prior home invasion did not affect her ability to identify Flores. While trial counsel presented the discrepancies in Torres' testimony, the jury found Flores guilty. The trial court also admitted into evidence the Facebook picture of Flores wearing the same mask allegedly worn during the charged offenses. Based on the totality of the circumstances, there is not a reasonable probability that the outcome would have been different if trial counsel had impeached Torres concerning her prior inconsistent testimony. Flores has not demonstrated prejudice.

*After investigating the alibi witnesses, trial counsel made a strategic decision not to call the witnesses.*

Flores argues that trial counsel performed deficiently because counsel did not investigate or interview the alibi witnesses and the lack of investigation was unreasonable. Flores contends that an investigator's report does not exist in his file, although trial counsel testified to hiring an investigator. Each of the alibi witnesses would have testified that Flores was in their shared apartment at the time of the shooting,

13

between 8:15 and 9:30 a.m. Flores argues that a jury may have believed this testimony, so trial counsel's failure to call the witnesses resulted in prejudice.

The State argues that trial counsel made a reasonable strategic decision to focus the jury on Torres' credibility rather than alibi testimony from members of Flores' family. As a reminder, at the first trial, Flores' trial counsel did not call the alibi witnesses to testify, and the jury was unable to reach a unanimous guilty verdict. Thus, as the first trial demonstrates, trial counsel made the reasonable decision to continue with the same strategy from the first trial. The State also argues that, even if trial counsel's performance was deficient, Flores was not prejudiced because both Torres and Ortiz identified Flores from his facial tattoo, his eyes, and his voice.

Defense counsel has "the duty to investigate completely the details of a defendant's alibi." *LaPointe v. State*, 42 Kan. App. 2d 522, 542, 214 P.3d 684 (2009). Counsel cannot avoid constitutionally deficient assistance by labeling an omission as strategy. See *Edgar*, 294 Kan. at 839. "When a defendant claims to have an alibi, the defense counsel's failure to investigate, contact witnesses, or provide notice of alibi witnesses constitutes deficient performance." *State v. Alvis*, No. 122,269, 2021 WL 4703871, at *3 (Kan. App. 2021) (unpublished opinion); see *State v. Sanford*, 24 Kan. App. 2d 518, 523-24, 948 P.2d 1135 (1997).

The key issue here is whether trial counsel properly investigated the facts underlying the alibi witnesses' testimony before making his strategic decision not to call the alibi witnesses. See *Mullins v. State*, 30 Kan. App. 2d 711, 716, 46 P.3d 1222 (2002). Although trial counsel did not investigate the witnesses himself, there was substantial competent evidence to find that trial counsel investigated the alibi witnesses. Trial counsel hired an investigator; filed a notice of alibi; obtained the names and addresses of the witnesses; subpoenaed the witnesses for trial; and knew what the witnesses would testify. Trial counsel knew each witness would testify that Flores was at home, rather

14

than committing this particular crime. Here, substantial competent evidence supported the district court's finding that trial counsel investigated the facts before he made a strategic decision not to call the witnesses.

Because Flores has not demonstrated that trial counsel performed deficiently, the district court did not err when it denied Flores' K.S.A. 60-1507 motion.

Affirmed.