NOT DESIGNATED FOR PUBLICATION

No. 126,337

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

HEATH UMPHENOUR,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Doniphan District Court; JAMES A. PATTON, judge. Submitted without oral argument. Opinion filed August 22, 2025. Affirmed.

*Gerald E. Wells*, of Lawrence, for appellant.

*Natalie Chalmers*, principal assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before SCHROEDER, P.J., HILL and GARDNER, JJ.

PER CURIAM: This is Heath Umphenour's appeal from a district court's denial of his collateral attack on his criminal convictions. After taking evidence on the K.S.A. 60-1507 motion, the district court found that Umphenour was provided with effective assistance of counsel and denied his motion. To us, Umphenour advances over 20 arguments alleging ineffective assistance of his three trial counsel as well as his appellate attorney. Because the district court's factual findings denying relief are supported by substantial competent evidence and Umphenour has not shown prejudice to his defense, we affirm.

1

*A sexual-assault complaint leads to the discovery of stored explicit images.*

Umphenour and K.D.B. married soon after they began living together. Umphenour adopted her three minor daughters—M.B.U., K.B.U., and H.B.U. Another child—J.P.K., also a minor, was a friend of the family and often spent the night in their home. Eventually, K.D.B. asked Umphenour to move out. After he did so, K.B.U. reported that Umphenour had sexually assaulted her.

Based on K.B.U.'s complaint that Umphenour had sexually assaulted her, the police launched an investigation. They then discovered sexually explicit material on Umphenour's electronic devices. Eventually, the State charged Umphenour with a total of 16 felonies: 2 off-grid felonies concerning the sexual assault of K.B.U. and the remainder relating to the electronic material. Umphenour was tried and convicted of 8 of the 16 felonies. The convictions were: one count of aggravated indecent liberties with a child; one count of aggravated criminal sodomy with a child under 14 years of age; four counts of sexual exploitation of a child; and two counts of breach of privacy. He is now serving several life sentences for his crimes. Umphenour appealed his convictions, which were affirmed by a panel of this court. See *State v. Umphenour*, No. 116,577, 2018 WL 2271419 (Kan. App. 2018) (unpublished opinion), *rev. denied* 309 Kan. 1353 (2019). A detailed recitation of the facts of the prosecution and trial may be found in that opinion. *Umphenour*, 2018 WL 2271419, at *1-3.

*The rules we follow are well-established.*

After a full evidentiary hearing on a 60-1507 motion, the district court must issue findings of fact and conclusions of law concerning all issues presented. Supreme Court Rule 183(j) (2025 Kan. S. Ct. R. 238). An appellate court reviews the court's findings of fact to determine whether they are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. Appellate review of the district court's

ultimate conclusions of law is de novo. *Khalil-Alsalaami v. State*, 313 Kan. 472, 486, 486 P.3d 1216 (2021).

To be entitled to relief under 60-1507, the movant must establish by a preponderance of the evidence either: (1) "the judgment was rendered without jurisdiction"; (2) "the sentence imposed was not authorized by law or is otherwise open to collateral attack"; or (3) "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." K.S.A. 2024 Supp. 60-1507(b) (grounds for relief); Supreme Court Rule 183(g) (2025 Kan. S. Ct. R. at 238) (preponderance burden).

A movant bears the burden of establishing entitlement to an evidentiary hearing. To meet this burden, a movant's contentions must be more than conclusory, and either the movant must set forth an evidentiary basis to support those contentions or the basis must be evident from the record. *Thuko v. State*, 310 Kan. 74, 80, 444 P.3d 927 (2019). If this showing is made, the court must hold a hearing unless the motion is a second or successive motion seeking similar relief. *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014). See also *Littlejohn v. State*, 310 Kan. 439, Syl., 447 P.3d 375 (2019) ("An inmate filing a second or successive motion under K.S.A. 60-1507 must show exceptional circumstances to avoid having the motion dismissed as an abuse of remedy."); *State v. Sprague*, 303 Kan. 418, 425, 362 P.3d 828 (2015) (applying initial pleading requirements when reviewing denial of posttrial, presentencing motion for ineffective assistance of counsel).

The district court shall hold an evidentiary hearing on a 60-1507 motion and make findings of fact and conclusions of law with respect thereto, unless the motion and the files and records of the case conclusively show the movant is not entitled to relief. K.S.A. 2024 Supp. 60-1507(b); Supreme Court Rule 183(f) and (j). See also *Stewart v. State*, 310 Kan. 39, 52, 444 P.3d 955 (2019) (finding district court must appoint counsel for indigent

3

K.S.A. 60-1507 movant only if it holds hearing at which State is represented by counsel; not required to appoint counsel if considering only written argument from counsel for State); *Fischer v. State*, 296 Kan. 808, 817-25, 295 P.3d 560 (2013) (discussing necessity and method of defendant's presence at any hearing).

*We use a two-part analysis of ineffective assistance of counsel claims.*

In reviewing a district court's decision on claims of ineffective assistance of counsel, appellate courts review the district court's factual findings using a substantial competent evidence standard. Appellate courts review the district court's legal conclusions based on those facts applying a de novo standard of review. *State v. Evans*, 315 Kan. 211, 218, 506 P.3d 260 (2022).

The extent of a movant's statutory right to be provided with effective assistance of counsel in a K.S.A. 60-1507 proceeding is a legal question to be reviewed de novo. *Stewart v. State*, 310 Kan. 39, 43, 444 P.3d 955 (2019).

Claims of ineffective assistance of trial counsel are analyzed under the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 (1984), and adopted by the Kansas Supreme Court in *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985). Under the first part, the defendant must show that defense counsel's performance was deficient. If successful, the court moves to the second part and determines whether there is a reasonable probability that, absent defense counsel's unprofessional errors, the result would be different. *Evans*, 315 Kan. at 217-18. In other words, we review the record for counsel's deficient performance and any resulting prejudice to the defendant.

To establish deficient performance, the defendant must show that defense counsel's representation fell below an objective standard of reasonableness. Judicial

scrutiny of counsel's performance in a claim of ineffective assistance of counsel must be highly deferential. A fair assessment of counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight, reconstruct the circumstances surrounding the challenged conduct, and evaluate the conduct from counsel's perspective at the time. *Evans*, 315 Kan. at 218. A court considering a claim of ineffective assistance of counsel must strongly presume that defense counsel's conduct fell within the wide range of reasonable professional assistance; that is, the defendant must overcome the strong presumption that, under the circumstances, counsel's action might be considered sound trial strategy. *Khalil-Alsalaami*, 313 Kan. at 486.

Under the second step of the analysis, the defendant must show that defense counsel's deficient performance was prejudicial. To establish prejudice, the defendant must show with reasonable probability that—based on the totality of the evidence—the deficient performance affected the outcome of the proceedings. A court hearing a claim of ineffective assistance of counsel must consider the totality of the evidence before the judge or jury. *Khalil-Alsalaami*, 313 Kan. at 486. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Evans*, 315 Kan. at 218.

*Lawyers are allowed to make strategic decisions at trial.*

Strategic choices made by counsel after a thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. Strategic choices made after an incomplete investigation can fall within the wide range of reasonable professional assistance if the decision to limit the investigation is supported by reasonable professional judgment. *State v. Hutto*, 313 Kan. 741, 750, 490 P.3d 43 (2021).

We will address Umphenour's complaints about his trial counsel first and then examine the work of his appellate lawyer.

5

*The evidentiary hearing*

Seeking habeas corpus relief, Umphenour filed this 60-1507 motion in the district court. That court took evidence on his claims. Both Umphenour and the State presented testimony and evidence. Umphenour presented testimony of his three trial lawyers—Sarah Swain, Jennifer Chaffee, and Cooper Overstreet; his appellate lawyer—Corrine Gunning; and three witnesses that Umphenour alleges his trial counsel failed to call as witnesses in his trial—Paige Trexler, Arika Smith, and Dreux Doty. Umphenour testified in his own behalf about how his trial counsel were ineffective for failing to allow him choice of counsel and that his trial counsel were unprepared at trial.

*Sarah Swain believed Umphenour was adequately represented by two lawyers in her law firm.*

Swain owns her own law firm in which Chaffee and Overstreet were employed as lawyers. Swain testified that Umphenour retained her services after he was charged. She recalled meetings with Umphenour in jail, specifically testifying that she remembered visiting Umphenour in jail once the decision was made that she would not be trying his case personally but that Overstreet and Chaffee would be trying the case. She estimated that visit occurred about 60 days before trial. Swain testified that Chaffee and Overstreet were prepared to try the case. She testified that Chaffee never expressed any concerns prior to trial about handling Umphenour's case. But Chaffee left Swain's law firm shortly after the trial based in part on Chaffee's disagreement with being assigned Umphenour's case.

*Jennifer Chaffee believed Swain passed off Umphenour's case at the last minute, leaving her and Overstreet unprepared for trial.*

Chaffee testified that one reason why she left Swain Law Office was due in part to how the firm handled Umphenour's case. She stated that Umphenour wanted Swain to try his case and Swain had Chaffee do it instead. Chaffee testified that she believed it put her in a bad position with Umphenour, and she did not think it was fair given the severity of Umphenour's charges and possible life sentence. She testified the decision that Swain would not be trying the case but instead Chaffee and Overstreet happened shortly before trial—estimating a week or two but less than a month.

Chaffee testified that Overstreet handled the investigation and preparation of evidence relating to technology, including preparing to cross-examine the State's forensic computer expert witness, Thad Winkelman. She stated that Overstreet began the cross but told Chaffee that he did not think he could handle it, so Chaffee took over the cross-examination. She testified that she felt totally unprepared to question Winkelman. Chaffee also testified that she reviewed the victims' statements in their entirety.

Regarding the voir dire and empaneled jury, Chaffee testified that she did not think Umphenour was able to get a fair and unbiased jury. She reasoned that many prospective and empaneled jury members had some form of familiarity with people involved in Umphenour's case. She stated that the jury "seemed much more favorable towards the alleged victims and their families," which changed how Chaffee examined some of the witnesses. She stated that she pulled back on a lot of the witnesses.

Chaffee testified that she made a mistake in not arguing that Janet Umphenour—Umphenour's former wife—could testify about K.D.B.'s reputation in the community under K.S.A. 60-460(z). She stated, "I know I did a bad job here. I feel like Mr. Umphenour got a really really raw deal."

7

On cross-examination, Chaffee testified that she is very critical of herself and always reviews things after trial that she could improve on but felt worse about this case as far as her abilities and Umphenour's defense. But she testified that any mistakes made did not rise to the level of needing to self-report for any violations of the rules of professional conduct. Later on cross-examination, Chaffee admitted that she offered to do Umphenour's sentencing at no charge. She testified that she did not do the sentencing because Umphenour preferred she not represent him at sentencing. She testified that he was angry at Swain because he felt like he was ditched at the last minute, given attorneys that he did not want, and ended up with Jessica's Law convictions. Chaffee clarified that she did not believe Umphenour said any of those statements to her directly.

*Cooper Overstreet testified about the preparation of Umphenour's defense.*

Cooper Overstreet also testified about the decision to have himself and Chaffee handle the case instead of Swain. Overstreet testified that he believed 60 days was more accurate than Chaffee's estimate of less than 30 days, stating he believed it was more than 60 days. He testified that it was far enough out from trial that it was not a last minute decision. Overstreet testified that he could not recall exactly why Chaffee took over the cross-examination of Winkelman but stated he did not recall specifically at that moment thinking that he could not do the cross-examination. He testified that both he and Chaffee agreed that she would do the cross-examination.

Overstreet testified that he did not recall Umphenour ever telling him that he did not want Chaffee and Overstreet to try his case but instead just wanted Swain. Overstreet testified that after trial, there was a lot of "justifiable disappointment and anger."

8

*Appellate counsel testifies about issues not raised on appeal.*

Corrine Gunning, Umphenour's appellate lawyer, testified about her professional judgment as to issues raised in her appellate brief as well as issues that she deemed were not favorable to raise on appeal. On appeal, Gunning raised four issues:

(1) Umphenour's convictions for sexual exploitation of a child by promoting a performance and by possessing a visual depiction, and his convictions for breach of privacy were multiplicitous;

(2) the prosecutor committed reversible error in closing argument by mischaracterizing evidence;

(3) the district court abused its discretion when it denied Umphenour's downward durational departure motion; and

(4) the district court illegally sentenced Umphenour to lifetime postrelease supervision for his off-grid convictions.

During his direct examination of Gunning, Umphenour focused on issues that were not raised on appeal. First, he asked why Gunning did not raise an issue relating to the "finding words" motion which dealt with the interviews of the victims. Gunning testified that she believed that issue was a difficult one to win given that the portion of the argument was dropped by the prosecutor and because there was a *Daubert* hearing and a separate hearing on the possible taint to the victims' testimony and interviews where Umphenour's objections had been denied.

Second, Umphenour asked why Gunning did not raise an issue relating to his motion to suppress the seizure of his phones and computer based on his argument that the search warrants lacked probable cause. Gunning testified that the issue is a very difficult issue to win, and probable cause is a very low burden. Gunning believed the issue was not a successful issue to raise on appeal.

Third, Gunning testified that she did not raise an issue relating to Winkelman's testimony about voyeurism and patterns of behavior. Though the issue was preserved and available for appeal, Gunning testified that she did not deem Winkelman's testimony to be improper behavior evidence.

Next, Gunning testified that she did not raise the issue of the reputation of K.D.B. that defense had sought to admit at trial through Janet Umphenour's testimony. Gunning admitted that she could have raised the issue on appeal but did not because she questioned its significance.

Gunning next testified that there were other areas of prosecutorial error in closing argument that could have been raised on appeal. Umphenour raised statements made by the prosecutor and characterized the statements as impermissible vouching for a witness. In another part of the prosecutor's closing argument, Umphenour characterized statements as exhorting jurors to honor their oath. Additionally, Umphenour raised a statement made by the trial judge and characterized it as judicial error.

Umphenour pointed to another part of closing argument where the prosecutor refers to Umphenour's previous marriage to Janet Umphenour. In the statement, the prosecutor references that Umphenour married Janet when she was 16. Umphenour characterized the statements as raising K.S.A. 60-455, prior crimes or other wrongdoings, arguing the statements were impermissible propensity evidence as previous sexual misconduct. Gunning disagreed with the characterization, testifying that it was not illegal sexual activity.

Finally, Umphenour construes the fact that Gunning's appellate brief was under the maximum page limit as proving there was additional room for the issues not raised on appeal. Gunning testified that she did have the pages to raise additional issues but hesitated to say the issues not raised were stronger.

On cross-examination, Gunning clarified that the prosecutor never referred to the juror's oath. She testified that she did not believe the issue relating to the search warrant was a successful argument on appeal. She also testified that her appellate brief was 33 pages and agreed that, based on her training and experience, quantity alone does not equal quality. She further agreed that a lot of briefs that are long and lengthy are not very good and that some short briefs are excellent. Finally, she testified that she used her professional judgment to determine which issues to raise on appeal.

*The district court concludes Umphenour had effective assistance of counsel.*

From the bench, the court announced its ruling. It found that Umphenour was not entitled to relief under K.S.A. 60-1507. In its ruling, the court made several factual findings related to Umphenour's ineffective assistance of counsel claims and addressed all of the issues raised by Umphenour about his trial and appellate attorneys. The court concluded that Umphenour's trial and appellate counsel were effective. It stated that his attorneys collaborated in Umphenour's defense appropriately, prepared and participated in all phases of the case, and did not provide ineffective assistance of counsel.

In his brief, Umphenour jams all of his allegations of ineffective assistance into one issue. This issue basically mirrors his arguments that he raised at the evidentiary hearing.

*Were these trial lawyers' performances so deficient that Umphenour's defense was prejudiced?*

We begin our review of trial counsels' labors keeping in mind what we are looking for whether there is proof of deficient performance that results in prejudice to their client. Two overall questions arise. First, how deficient can their performance be if—after a long hard fought trial—the jury acquits the defendant of 8 of the 16 charges? Second, the trial

court found that one defense counsel's testimony was not credible; how does that finding affect our review? We will try to answer both questions during our analysis and will review the claims in order.

*Counsel of choice*

Umphenour argues that when he retained Sarah Swain and her law firm to represent him, he believed that he was getting Sarah Swain exclusively. Swain did not try his case, two other lawyers in her firm conducted the trial. Umphenour now argues that his right to the counsel of his choice was violated. We are not persuaded that this is true.

Umphenour never raised this issue before or during the trial. It was first raised at the habeas corpus motion—filed well after his trial, conviction, and appeal.

The testimony differed regarding when Umphenour received the news that Swain would not be active in the jury trial. Swain and Overstreet estimated the decision was relayed to Umphenour at least 60 days before trial. Chaffee estimated it was relayed to her about two weeks before trial. Umphenour testified that he found out on the first day of jury selection.

After a review of the record, the district court found that Umphenour was not denied counsel of his choosing. Umphenour did not complain about his representation at any stage of the proceedings, though he could have done so. The court also noted that just before the trial, there were last-minute plea negotiations with Umphenour and his trial counsel in attendance. During those negotiations, Umphenour expressed no complaint about his representation. The court found that Umphenour observed all three lawyers argue his case on his behalf at hearings before trial. The court found that Umphenour's trial counsel prepared an aggressive defense and were not ineffective. We cannot find fault in the judge's holding on this point.

12

Umphenour cites *State v. Anthony*, 257 Kan. 1003, 898 P.2d 1109 (1995), to support his argument that denial of an accused's counsel of choice is an essential element of the Sixth Amendment of the United States Constitution. But the holding in *Anthony* was based on the fact that Anthony raised the issue of his right to counsel of his choice by requesting a continuance of his trial. In other words, Anthony's complaint was made *before* trial. Umphenour only raised this issue *after* trial in his collateral appeal of his convictions. The district court found that Umphenour's claim that he was denied the counsel of his choice and would have looked for a different lawyer to represent him was not credible. This conclusion is supported by the fact that Umphenour failed to raise the issue before trial.

*Were counsel prepared for trial?*

Umphenour argues that his trial counsel were unprepared to try his case. He cites Chaffee's testimony at the evidentiary hearing to argue that his trial counsel failed to prepare redactions, had no knowledge of exhibits previously provided to Swain, failed to prepare jury instructions in a timely manner or provide an exhibit list, failed to file motions, and requested investigations at the last minute. He contends that there was effectively no consultation between himself and his trial counsel leading up to the trial—a critical stage of the case. He admitted that there were three meetings with counsel before trial. Umphenour relies heavily on Chaffee's testimony at the evidentiary hearing.

The district court found that Chaffee's testimony lacked credibility. The court stated that Chaffee purposely spoke poorly about her own work: "The Court believes that she is minimizing the work that she did in an effort to assist the petitioner in seeking his petition for 1507."

We note that she admitted on cross-examination that any mistakes she made did not rise to the level that she needed to self-report her trial work for any violations of the

rules of professional conduct. This adds weight to the trial court's observation. We also note that Overstreet's testimony supports the district court's findings given that Overstreet believed that he was prepared to try Umphenour's case. He testified that in preparing for trial, he helped draft motions; communicated with experts and investigators; prepared witnesses; and conducted legal research.

The district court found Umphenour's trial counsel performed adequately even though some of the results were unfavorable. Substantial competent evidence supported the district court's factual findings, and those findings supported the court's conclusion that Umphenour's trial counsel was not ineffective. In answer to our second question we propounded above, we feel bound by the lack of credibility finding about Chafee's testimony. We will not substitute our judgment for the district court's. The evidence supports the court's findings.

*Strategic decisions by counsel*

Umphenour makes several arguments that his trial counsel were ineffective for failing to use an expert forensic computer witness to prepare for and use during the trial. Dreux Doty is a digital forensics expert that was retained by Swain to consult in Umphenour's case. Doty prepared a pretrial report, compiled through his access to the electronic discovery in this case. Doty indicated to Umphenour's counsel that he needed additional information to prepare a final report but never obtained that information.

Specifically, Umphenour argues that his trial counsel was ineffective in failing to follow up and investigate the forensic computer evidence. He contends that his trial counsel failed to fully investigate forensic computer evidence; failed to impeach or challenge the State's computer expert; failed to have Dreux Doty listen to the State's computer expert in court for counsel's cross-examination preparation; and failed to call Doty as an expert witness.

14

For support, Umphenour relies on *Mullins v. State*, 30 Kan. App. 2d 711, 46 P.3d 1222 (2002), that this amounts to ineffective assistance of counsel. In *Mullins,* trial counsel abandoned all inquiry into child interviewing techniques because his trial counsel decided to forego investigation of the computer evidence. But *Mullins* is distinguishable from this case because Mullins' conviction relied primarily on the victim's testimony. *Mullins*, 30 Kan. App. 2d at 717. Therefore, trial counsel's decision not to present strong evidence to undermine the victim's allegations prejudiced Mullins' defense. 30 Kan. App. 2d at 717-18. Undermining the witnesses' testimony would be a major component of that case. But the facts here differ.

In our view, the facts here align with those in *Wininger v. State*, No. 125,180, 2023 WL 4832670, at *4-7 (Kan. App. 2023) (unpublished opinion). In *Wininger*, defense counsel investigated and consulted an expert witness on forensic interview techniques. 2023 WL 4832670, at *5-6. Further, Wininger's conviction was not based primarily on the victim's allegation but rather on multiple sources of evidence from the testimony by corroborating witnesses and strong evidence to convict Wininger. 2023 WL 4832670, at *5-7. Unlike *Mullins*, calling into doubt the testimony of just one witness would have little effect here.

We find *Wininger* persuasive. Here, the jury had evidence from several sources supporting Umphenour's convictions. In addition to the victims' testimony, the State presented evidence of sexually explicit pictures and videos of the victims that were obtained from Umphenour's two phones and his computer. The jury also heard testimony from law enforcement officers and computer forensic analysts. See *Umphenour*, 2018 WL 2271419, at *2-3.

As with the *Wininger* facts, Umphenour's trial counsel investigated and consulted with expert witnesses on the forensic computer evidence. The district court concluded that Umphenour's trial counsel made a reasonable strategic decision to not employ Doty

15

as a witness, given Doty's limited training as it related to this case and his failure to find and review relevant information. Appellate courts must not reweigh evidence, resolve conflicts in evidence, or make credibility determinations. *Khalil-Alsalaam*, 313 Kan. 472, Syl. ¶ 7. Therefore, because the record reflects substantial competent evidence supports the district court's factual findings, we are bound by those findings.

The facts support the court's conclusion. Trial counsel's decision to not employ Doty as a witness was objectively reasonable. Umphenour's trial counsel exercised reasonable professional judgment in their trial strategy, especially given that counsel was able to extensively cross-examine—totaling 96 pages in the trial transcript—the State's forensic computer expert on the issues highlighted by Doty. Therefore, Umphenour fails to show his trial counsel was ineffective on this issue.

In passing, we note that Umphenour's brief contains an issue statement under subsection (g) regarding his trial counsel's failure to have Robin Umphenour testify at trial. But no argument, or any citations to the record or caselaw, accompanies the issue statement. Therefore, we deem the issue waived or abandoned as not adequately briefed. See *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020).

*Is deciding not to call Paige Wood as a trial witness deficient performance?*

Umphenour next argues that his trial counsel's failure to speak to or call Paige Wood as a witness was ineffective assistance of counsel. He claims that Wood had personal knowledge that M.B.U. fabricated her allegations against Umphenour.

At the evidentiary hearing, Wood testified that while at a high school football game, Arika Smith—Wood's friend and M.B.U.'s partner at the time—told Wood that M.B.U. made up the allegations against Umphenour. Wood recalled there was a group of people with her when she heard Smith's statement. After hearing that M.B.U. may have

16

fabricated the allegations, Wood connected with Umphenour's sister on Facebook. Wood was never contacted by Umphenour's lawyers during the trial. Smith also testified at the evidentiary hearing and denied ever making the statement relayed by Wood.

The district court found that Wood had only reported the statement to Umphenour's sister. Without evidence that the statement was ever reported to trial counsel, the failure to investigate a statement that counsel were not aware of could not be ineffective assistance of counsel. In Umphenour's brief, he claims that Swain was aware of Wood's statement based on an email sent by Janet Umphenour containing a list of leads to investigate.

Frankly, the value of the testimony is contested. We note that the only conviction relating to M.B.U. was for a breach of privacy, the evidence for which was the pictures and videos found on Umphenour's electronic devices. The jury acquitted Umphenour of the remaining charges relating to M.B.U. Further Umphenour has not shown that he was prejudiced by his counsel's failure to call Paige Wood as a witness at trial. It appears from the jury's verdict, that his trial counsel was effective in attacking M.B.U.'s credibility as the jury acquitted Umphenour on eight of his charges.

Therefore, Umphenour's trial counsel was not ineffective for failing to call Paige Wood as a witness at trial.

*Cross-examination of the victims*

Umphenour next claims that his trial counsel were ineffective for failing to impeach the victims. He argues that Chaffee failed to use the victims' prior testimony to impeach their credibility. He claims that Chaffee did not question the victims about the clothing that they used to identify themselves in the sexually explicit pictures.

17

But the record shows that Chaffee did extensively cross-examine both victims, including how the victims identified themselves in the pictures and videos. And like the previous issue, the jury's verdict suggests that Chaffee was effective in attacking M.B.U.'s credibility given the fact that the jury acquitted Umphenour on eight of the nine charges relating to M.B.U. Additionally, the basis for the conviction relating to M.B.U. was a video, which a panel of this court concluded in Umphenour's direct appeal was undisputedly showing two nude females, taken at night from outside a window. *Umphenour*, 2018 WL 2271419, at *2.

Chaffee made a strategic decision not to cross-examine K.B.U. more aggressively for fear that she might alienate the jury. During Chaffee's cross-examination, K.B.U. became emotional—at one point K.B.U. put her head down in her arms while crying. Given the circumstances, Chaffee's restraint was a strategic trial decision. But her restraint did not make it an ineffective cross-examination. Chaffee questioned K.B.U. about several inconsistencies in her testimony.

The district court found that Chaffee's decision to not concentrate on a small inconsistency in the victims' testimony was a reasonable strategy. That finding is supported by substantial competent evidence in the record and further supports the court's conclusion that Chaffee's performance during her cross-examination of the victims was not deficient nor did it deprive Umphenour of a fair trial. Again, we see no prejudice to the defense on this point.

*Redaction of defendant's statements*

For Umphenour's final argument about his trial counsel's strategic decisions during his trial, he contends that his trial counsel failed to redact statements that he made to law enforcement officers about his previous marital infidelity. He claims that his counsel failed to ask the court to preclude the use of non-redacted material at trial, and that failure

18

was prejudicial because the State could use Umphenour's statements in closing arguments to infer that he was a "sexual miscreant."

The district court noted that Umphenour's trial counsel did obtain some redactions while others were denied by the trial court. The court found that Umphenour's trial counsel, "appeared to aim the evidence of petitioner's infidelity in terms of bolstering his credibility. It appeared from that evidence that the tactic was to show defendant had nothing to hide, which would give greater credence to any denial of the charged offenses." The court inferred that the appearance of honesty and forthrightness of petitioner was an effective logical argument and a valid strategy. And Chaffee agreed on cross-examination that such a theory is something she would have used.

Therefore, the strategic decision to use Umphenour's statements to law enforcement in closing arguments to show Umphenour's propensity for truthfulness was reasonable. As a result, his trial counsel was not ineffective for not seeking redactions of those statements.

*Jury selection*

Umphenour makes four arguments about his trial counsel's performance in jury selection. He contends that his trial counsel was ineffective for
(1) failing to challenge the panel of jurors;
(2) failing to challenge a specific juror;
(3) failing to adequately question prospective jurors; and
(4) failing to strike certain prospective jurors.

Umphenour does not argue that specific jurors were biased. Instead, he contends that because some jurors had familiarity with the victims or their families, his trial counsel was wholly ineffective for failing to successfully challenge each prospective

19

juror. He says that seven of the jurors that were empaneled had varying degrees of familiarity with the victims' family. Umphenour asserts that his trial counsel had a duty not only to individually challenge these jurors, but to also challenge the entire venire panel.

If there are some jury members familiar with the people involved in a trial, that fact does not mean that they are automatically disqualified to serve on a jury. See K.S.A. 43-156. That law provides that to qualify as a juror, the individual must be a citizen of the state, resident of the county, and possess the qualifications of an elector. Under K.S.A. 22-3410(2), each party *may* challenge a jury for cause and the challenge is tried by the court. Subsection (2)(a) provides that a juror may be challenged for cause if they are related to a "person alleged to have been injured by the crime charged or the person on whose complaint the prosecution was begun, by consanguinity within the sixth degree, or is the spouse of any person so related."

Umphenour contends that Chaffee failed to challenge prospective juror—Mr. R— under K.S.A. 22-3410(2)(a). But Chaffee did challenge Mr. R for cause for different reasons. The trial court denied the challenge. That said, Mr. R was struck by using a peremptory strike, so he never served on Umphenour's jury. As a result, Umphenour was not prejudiced by Mr. R since he was not on the jury.

Further, Umphenour's claim that his trial counsel was ineffective for failing to challenge the panel as a whole and instead passing the panel for cause is premised on the fact that such a challenge is essential to preserving the issue on appeal. But that is wrong. Counsel need only challenge the individual before the jury is sworn to try the case, and that individual must end up on the jury. K.S.A. 22-3410(3); *State v. Flack*, 318 Kan. 79, 104, 541 P.3d 717 (2024).

20

The district court found that Umphenour's trial counsel was not ineffective in their conduct of jury selection. Relevant to that finding was that the county in which Umphenour's trial occurred is a small, rural county. The court noted that "[t]he likelihood that jurors will have some acquaintance with those individuals involved in a criminal case and some knowledge of everyone involved is strong." The court made a common-sense ruling here that we affirm.

Umphenour's trial counsel made proper challenges and adequately questioned prospective jury members. Umphenour has not shown that his counsel was ineffective in jury selection, nor has he demonstrated any prejudice as a result of his counsel's performance.

*Failing to object to the admission of some exhibits*

Umphenour next claims that his trial counsel failed to object to the admission of evidence obtained from his electronic devices. He contends that his counsel should have objected on the same basis used in his motion to suppress the seizure of his electronic devices. He argues that the failure to contemporaneously object to the evidence resulted in Umphenour's failure to preserve his right to appeal that evidentiary issue.

Umphenour's trial counsel objected to the evidence being admitted on foundation grounds and stated that he was lodging the same objections regarding the search of the phone. Umphenour does not state what objection he believes should have been made— only that the failure to contemporaneously object failed to preserve his evidentiary appeal. The district court also found that the decision by Umphenour's appellate counsel not to raise the issue concerning the search warrants was reasonable and did not amount to ineffective assistance of counsel. Umphenour has not shown that he was prejudiced by his trial counsel's failure to object on these specific grounds. Also, this issue was not raised on appeal.

*Laying an evidentiary foundation*

Umphenour's last argument about his trial counsel concerns the testimony by his ex-wife, Janet Umphenour. He contends that Janet had knowledge of the three of the State's witnesses'—the two victims and their mother—reputation for truth or veracity. He claims that his trial counsel failed to adequately lay foundation for her testimony and thereby denied him the effective assistance of counsel.

Janet Umphenour claimed to have spoken to people in the witnesses' community and had heard negative things about their reputations. Umphenour's trial counsel sought the admission of Janet's testimony as well as a letter that she wrote to the lead detective in the case detailing their bad reputations. The State objected to the testimony, and the court allowed Umphenour's counsel to make a voir dire examination about Janet's testimony outside the presence of the jury as a proffer of the reputation evidence. The trial court concluded that Janet was not a member of the community, lived in the neighboring town, and did not personally know the witnesses. The court also concluded that Janet's contact with the witnesses was superficial and lacked the requisite substance to allow the reputation testimony.

In this 60-1507 action, the district court concluded that these facts did not satisfy the legal requirement for Janet's opinion about the witnesses' reputation. The court's conclusion is supported in the record as Janet testified that she lived in a neighboring town and that she heard that Umphenour was stupid for getting involved with the victims' mother. Based on the proffered testimony, Umphenour's trial counsel reasonably argued for the admission of the reputation evidence under the facts available. Therefore, the district court's conclusion that Umphenour's trial counsel was not ineffective is supported by the record.

*Umphenour fails to show his trial counsel was ineffective.*

As stated in the district court's ruling, Umphenour's trial counsel made strategic choices based on the witnesses and the evidence admitted at trial. The district court found that any deficient performance that may have occurred did not deny Umphenour his right to a fair trial. Appellate courts do not reweigh evidence, pass on the credibility of witnesses, or resolve conflicts in the evidence.

The district court's findings were supported by substantial competent evidence in the record, and those findings supported the court's conclusion that Umphenour was not denied the effective assistance of counsel. Additionally, Umphenour has shown little prejudice to his defense.

We hold that these trial lawyers' performances were not so deficient that Umphenour's defense was prejudiced.

*We review appellate counsel's performance.*

We review claims of ineffective assistance of appellate counsel with the same two-part *Strickland* test. To prove the claim, defendants must show that (1) their counsel's performance was deficient; and (2) that they have suffered prejudice from that performance. Under the first step, to prove deficient performance, a defendant must show their counsel's performance, based on the totality of the circumstances, fell below an objective standard of reasonableness. Then, under the second step, the defendant must show that there is a reasonable probability that, but for their counsel's deficient performance, the appeal would have succeeded. *Khalil-Alsalaami,* 313 Kan. at 526.

*Use of "finding words" protocol*

Umphenour argued that his appellate counsel, Corrine Gunning, failed to raise on appeal an issue on a pretrial ruling by the trial court about law enforcement's use of the "finding words protocol" in the victims' interviews. He alleged that the use of the protocol tainted the interviews and asked for their suppression. The trial court denied their suppression on this ground. Umphenour contends that this issue was the strongest he had on appeal. Because Gunning failed to brief the issue, his appeal was hamstrung. He argues that Gunning gave no justifiable reason for omitting the issue on appeal during her testimony at the evidentiary hearing.

Umphenour contends that a similar issue was raised in another appeal in *State v. Ballou*, 310 Kan. 591, 448 P.3d 479 (2019). He admits that the Supreme Court did not rule in Ballou's favor on this point but asserts that the facts here are much stronger than those in *Ballou* and, therefore, Gunning's failure to raise the point was deficient performance. To us, it is an example of the exercise of professional judgment.

Even though Umphenour now believes the issue was strong, appellate attorneys need not raise issues that are weak, meritless, or would result in harmless error. *Khalil-Alsalaami*, 313 Kan. at 527. And even if another attorney raises the issue, the failure of an appellate attorney to raise that issue must fall outside the range of reasonable professional judgment to amount to deficient performance. 313 Kan. at 527.

Here, the expert witness that testified for Umphenour's contention that the victims' interviews should be suppressed never reviewed the interviews. Appellate counsel's decision that the issue was not meritorious and thus should be omitted was not unreasonable. Indeed, the district court found that appellate counsel exercised reasonable professional judgment by not raising the issue given the expert witness had not reviewed the videos of the actual interviews and could only testify about generalities. The court

24

concluded that it was a valid appellate strategy to omit the issue and Umphenour's appellate counsel was not ineffective. Because the record supports the district court's factual findings and conclusion, we see no error here. There is nothing in this record that persuades us that appellate counsel's conduct fell outside the range of reasonable professional judgment. We see no deficient performance here.

*Search warrants*

Umphenour also contends that his appellate counsel failed to raise the issue that the search warrants for his electronic devices lacked probable cause. As the State points out, the standard for reviewing the sufficiency of a search warrant is not whether probable cause supports the allegations contained in the warrant. On appeal, the standard is whether the issuing magistrate had a substantial basis for concluding probable cause existed. There is a distinction between the two.

Despite this distinction, the district court concluded that probable cause supported the search warrants:

> "The search warrants were based upon the statements of K.B.U. Defense counsel argued that law enforcement did not attempt to corroborate the facts from the K.B.U. statement or make a physical inspection of the home or room. The trial court denied the motion to suppress. The statements of K.B.U. were sufficient to establish probable cause in this case."

Again, we see an exercise of professional judgment come into play here. Such judgments are based on training and experience. Attorneys are not identical and do not make identical evaluations of their cases. Therefore, the decision to omit this issue on appeal was not outside the range of reasonable professional judgment. Substantial competent evidence supported the district court's factual findings and conclusion here. We see no avenue for relief for Umphenour on this point.

25

*Testimony of Thad Winkelman*

Winkelman is a computer analyst with the State. He testified that the contents of Umphenour's two phones showed a pattern of behavior consistent with voyeurism. Umphenour argued that his appellate counsel was ineffective for failing to raise the issue concerning Winkelman's testimony about behavior evidence. Umphenour's trial counsel objected to the testimony, arguing that Winkelman lacked the requisite expertise to render an opinion on behavior patterns, which the trial court overruled.

Umphenour now argues that Winkelman's testimony was the product of an unqualified opinion that prejudiced Umphenour by impermissibly inferring his guilt.

The testimony was not intended for the jury to infer Umphenour's guilt but it is aimed at the identity of the electronic devices. The State needed to prove that the same individual consistently exhibited patterns of behavior to show that Umphenour was the user of the electronic devices containing sexually explicit pictures and videos of children.

That the issue was preserved for appeal does not automatically deem the issue a colorable or meritorious one. It is within the range of an appellate attorney's reasonable professional judgment to omit issues that are weak or meritless. *Khalil-Alsalaami*, 313 Kan. at 526-27.

Winkelman's testimony was not that Umphenour was a voyeur or that Umphenour was guilty of the charged offenses, nor did Winkelman opine on who conducted the internet searches. Therefore, because appellate counsel's decision to omit the issue was within her professional judgment, it does not demonstrate deficient performance. Further, Umphenour has not shown how he was prejudiced by his appellate counsel's omission of the issue as it has not been shown that the issue would have been successful.

Like the previous three issues, Umphenour contends that his appellate counsel was ineffective in omitting an issue concerning reputation evidence on appeal. This issue is presented as an alternative claim based on the trial court's exclusion of Janet Umphenour's testimony concerning the reputation of the victims and their mother. Umphenour argues that the credibility of the three witnesses was integral to his defense. He contends that by omitting the issue, his appellate counsel chose to ignore the integral defense and, therefore, was ineffective by abandoning the issue.

But as we stated above, trial counsel laid the foundation for the testimony based on the facts available. Based on the proffer, the trial court determined that Janet lacked the requisite ties to the community and personal knowledge of the witnesses to testify about the witnesses' reputation for truth. Appellate counsel's decision to omit this issue was reasonable given the lack of sufficient proffer in the record to establish that Janet met the requirements to give reputation testimony. Under the circumstances, appellate counsel's performance was not deficient and Umphenour has not established that but for his counsel's performance, his appeal on this issue would have succeeded. In other words, he has not shown us any prejudice.

Umphenour's final argument about the effectiveness of his appellate counsel concerns the decision not to raise on appeal other claims of prosecutorial error. On appeal, Gunning raised prosecutorial error as one of four issues in Umphenour's direct appeal, arguing that the prosecutor erred by mischaracterizing evidence in closing arguments. Gunning argued that the mischaracterization was used to bolster the primary victim's testimony.

Also, Umphenour contends Gunning should have raised three more issues: statements by the prosecutor that the victim did not make up her allegations; an impermissible exhortation to the jury; and an interaction between counsel and the trial court that Umphenour argues could be judicial error.

27

The district court disagreed that the decision to not raise these other instances of prosecutorial error amounted to ineffective assistance of appellate counsel. The court found that while the prosecutor's comments may be improper in isolation, considering the context of the entire closing argument, the comments were harmless. Thus, the court concluded, Gunning was not ineffective by exercising her professional judgment and deciding not to raise the other instances of prosecutorial error.

A quick review of applicable law is helpful at this point. For prosecutorial error claims, a reviewing court employs a two-step analysis to determine whether the prosecutor's statements fell outside the wide latitude afforded to prosecutors to conduct the State's case in a way that does not offend the defendant's constitutional right to a fair trial. *State v. Chandler*, 307 Kan. 657, Syl. ¶ 6, 414 P.3d 713 (2018). Then, if error is found, the court must determine whether the error prejudiced the defendant's due process rights, using the harmlessness inquiry announced in *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

Under the test, the error is harmless if the State demonstrates beyond a reasonable doubt that the error did not affect the outcome of the trial in light of the entire record. Put differently, reversal is warranted unless proven that there is no reasonable possibility that the error contributed to the verdict. *Khalil-Alsalaami*, 313 Kan. at 527.

Umphenour asserts that the prosecutor's comments concerning the State's burden were erroneous. The statement in its entirety lends context to Umphenour's assertion that the prosecutor's statements were an impermissible exhortation to the jury:

> "Well, if you don't follow the law, then sure you can definitely acquit Heath Umphenour. If you hold the State to beyond all doubt, sure. If you hold us to an

28

impossible burden, sure you can acquit. That's what the arguments came down to. You were asked to not follow the law. I'm asking you to follow the law."

The other comments that Umphenour raises deal with the prosecutor stating that K.B.U. did not make up the allegations and had no motive to do so. A prosecutor may not vouch for witnesses in closing arguments. Thus, any comments vouching for witnesses are erroneous.

But even assuming that the comments were erroneous, reversal would not result. The district court found that the comments were made in response to a particular argument by defense counsel, and within the prosecutor's wide latitude he was allowed. The court also determined that the comments did not prejudice Umphenour's due process rights to a fair trial because the

> "comments were grounded in the evidence and testimony that K.B.U. had been consistent in her statements and testimony. The trial defense spent considerable effort attempting to cast doubt on the testimony by K.B.U. Although these short statements may be improper comment, the comments were harmless in the light of the entire record and particularly the closing arguments made by defense counsel. There is no reasonable possibility that the error contributed to the verdict given the nature and extent of the evidence presented in this matter. The balance of the complaints of prejudice are also proper responses to the arguments advance by defense counsel in closing argument."

The district court's conclusion that Umphenour's due process rights to a fair trial were not violated by the prosecutor's comments is indeed supported by the record. Therefore, substantial competent evidence supported the court's conclusion that Umphenour's appellate counsel was not ineffective for omitting the other instances of prosecutorial error on appeal. Gunning's failure to raise these as appellate issues is not deficient performance.

29

*Some final reflections*

As we were reviewing the many issues raised in this record, a question arose. Could these four lawyers have done better?

Of course, they could have done better. We all can do better. When we look back and scan our performances, we deal with what was—not with what could be. Hindsight is quite helpful in exposing our deficiencies and useful in improving our future efforts. But hindsight is not useful in answering the questions presented in this appeal.

Frankly, our law does not demand a perfect performance by a lawyer; it demands a professional performance—a performance that is not prejudicial to their case and client. Attorneys must make many professional choices. Some work; some do not. Those choices are the essence of the practice of law.

Yes, these lawyers could have done better and made different professional choices. But, in the end, we conclude there are no deficient performances in the record of this trial and appeal. Even so, there has been no showing of prejudice to Umphenour. We therefore affirm the district court's decision.

Affirmed.